RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0254p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

FIRST TRUST CORPORATION,

         *Plaintiff-Appellee,*

    *v.*

No. 02-5941

BRENDA FUSTON PETREY BRYANT,

         *Defendant,*

KAY HAMLIN,

    *Intervening Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 97-00563—Jennifer B. Coffman, District Judge.

Argued: January 28, 2004

Decided and Filed: June 10, 2005

Before: SUHRHEINRICH, CLAY, and SUTTON, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Michael Dean, Irvine, Kentucky, for Appellant. John W. Mill, SHERMAN & HOWARD, Denver, Colorado, for Appellee. **ON BRIEF:** Michael Dean, Irvine, Kentucky, for Appellant. John W. Mill, SHERMAN & HOWARD, Denver, Colorado, for Appellee.

    SUHRHEINRICH, J., delivered the opinion of the court, in which CLAY, J., joined. SUTTON, J. (pp. 15-20), delivered a separate dissenting opinion.

———————————

## OPINION

———————————

    SUHRHEINRICH, Circuit Judge. In this statutory interpleader action, the district court awarded more than $53,000 in attorney's fees to the interpleader plaintiff, First Trust Corporation ("First Trust"), the former trustee of a pension plan governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Appellant, Intervenor-Defendant, Kay Hamlin, ("Kay"), is the beneficiary of that plan. She contends on appeal that the district court abused its discretion in awarding attorney's fees to First Trust and in limiting the amount she received.

1

For the following reasons, we **REVERSE** the award of attorney's fees to First Trust. We further hold that although the district court appropriately awarded Kay attorney's fees, it inappropriately limited her to only those associated with her motion to intervene.

## I. Facts

W.D. Bryant & Sons, Inc., offered an ERISA-covered pension plan benefit to its employees, known as the "W.D. Bryant & Sons, Inc., Money Purchase Pension Plan" ("Plan"). First Trust served as the nondiscretionary, directed trustee ("directed trustee") of the Plan until shortly after it filed this action and the employer appointed a successor. Elvin Bryant ("Elvin"), a co-owner of the company, serves as the Plan Administrator and authorizes First Trust to make payments to beneficiaries. Marvin L. Bryant, Sr., Elvin's brother, was an employee of the company and a plan participant until his death in 1995.

On July 1, 1982, Marvin designated as his beneficiary his then-wife Kay Bryant, now Kay Hamlin ("Kay"), the Appellant in this case. Marvin and Kay had two sons, Lorren M. Bryant ("Lorren") and Marvin Lee Bryant, Jr. ("Lee"), who were also parties to the action below. Marvin and Kay divorced in June 1985. Marvin later remarried. On the date of his death, he was married to Brenda Fuston Petry Bryant ("Brenda"), also an interpleader defendant. However, Marvin never changed his designated beneficiary after his divorce from Kay. Upon his death, a family dispute arose over who was entitled to his pension benefits, with claims to the pension plan benefit funds ultimately being made by his two sons, his widow, and his first wife.[1]

In August 1995, a Kentucky state probate court entered an agreed order between Lorren, Lee, and Brenda that essentially divided the pension plan assets into thirds. However, in March 1996, the state probate court issued a new order that ordered about one half of the funds to be distributed to Brenda and the rest to be split between the sons. The order nevertheless directed that "no party" was to have access to the pension plan benefits "except by a written Court Order executed by a Judge of competent jurisdiction."

After each court order, First Trust received beneficiary distribution election forms from Elvin authorizing First Trust to make payments to Brenda, Lorren, and Lee in the proportions ordered by the court. At some point, First Trust also received a copy of an antenuptial agreement between Marvin and Brenda that provided she would receive all sums in excess of $200,000 in his pension plan should he die during the marriage. Over time, First Trust received repeated telephone calls from all three claimants.

Finally, in January 1997, about a year and one-half after Marvin's death, First Trust wrote to Elvin as the Plan Administrator outlining the multiple requests for distributions and the conflicting court orders. It insisted on a resolution of who was the beneficiary by February 7, 1997, or it would have no alternative but to interplead the assets into court for such a determination.

Prior to actually filing its interpleader suit, First Trust repeatedly discussed venue with the attorney for Marvin's sons, who requested that the action be filed in Kentucky, where one of the sons resided. First Trust attempted, unsuccessfully, to settle the venue issue. First Trust proposed to Lee and Lorren that they sign a release and reimburse First Trust for its attorney's fees, and in

---

[1]Marvin had been married to both women twice. He and Kay married in October 1963, but were divorced by September the following year. They then remarried in September 1966 and remained married until their second divorce in 1985. Marvin married Brenda in August 1993 but they were divorced by March the next year. Marvin and Brenda remarried in March 1995, just a few months before his death. Shortly after they remarried, Marvin elected to retire effective July 1, 1995, and receive pension benefits. However, he was killed on July 13, 1995, well short of a year after remarrying Brenda and prior to any benefits having been paid to him. Marvin died after he was shot by Brenda's brother.

exchange, First Trust would bring the interpleader suit in Kentucky. In the sons' view, this proposal was "blackmail" and they refused to accept it.

## A. The Colorado Proceedings

On May 9, 1997, First Trust filed this statutory interpleader action in the United States District Court of Colorado. It named as defendants Marvin's second wife, Brenda, and his two sons, Lorren and Lee. First Trust invoked the court's jurisdiction under the federal interpleader statute, 28 U.S.C. § 1335, and the diversity statute, 28 U.S.C. § 1332. First Trust contended venue was appropriate in Colorado under 28 U.S.C. § 1397, which governs venue for interpleader actions, because it was a "claimant" to the funds and a citizen of Colorado. First Trust's status as claimant was based solely on its Prayer for Relief requesting attorney's fees to be paid from the Plan assets attributable to Marvin prior to their distribution. In support of its fee request, First Trust alleged that the attorney's fees incurred were "for the ordinary and necessary administration and operation of the Pension Plan, have been reasonably incurred, and have not been paid by [the employer]."

Significantly, First Trust did not name Kay Hamlin as a defendant. It nevertheless acknowledged in the complaint that "[o]n or about July 1, 1982, while he was married to his first wife, Kay Bryant, Mr. Bryant designated Kay Bryant as the primary beneficiary." First Trust attached to its complaint the beneficiary designation form showing that Marvin had designated Kay as his beneficiary. The complaint also explained that Kay had not made any claim to the assets. First Trust later claimed that it did not join Kay because it thought that under Treasury Regulation, 26 C.F.R. § 1.401(a)-20, Marvin's marriage to Brenda invalidated the designation of Kay as the beneficiary.

On First Trust's motion, the court ordered the interpleaded funds to be deposited into the court's registry. Those funds were tendered on May 21, 1997, in the amount of $305,459.28. In its tender, First Trust stated they "represent[ed] all funds . . . attributable to Marvin L. Bryant." In filing the complaint and tendering the funds, First Trust incurred modest attorney's fees and costs–about $2,700.

On June 6, 1997, when the interpleader suit was in its initial stages, the employer's board of directors dismissed First Trust as directed trustee of the Plan, effective immediately, and appointed First National Bank and Trust, ("FNBT"), as successor trustee. FNBT was never joined as a party.

On July 14, 1997, Lorren and Lee opposed the interpleader action, seeking its dismissal or a change of venue on the ground that venue was improper in Colorado because no true claimant resided in Colorado. They argued that First Trust was not a claimant to the funds based on its demand for attorney's fees. They also contended that First Trust's request for attorney's fees and costs should be denied.

On August 5, 1997, First Trust opposed a transfer, contending that it was a proper claimant to the funds based on its request for attorney's fees. It further argued that litigation in Kentucky would be inconvenient and would be an "additional expense to be paid out of *the Pension Plan assets*." J.A. 156 (emphasis added).

On August 14, 1997, Brenda moved to compel First Trust to join as a party Kay Hamlin, Marvin's first wife. She noted that nothing prevented Kay, the only named beneficiary, from challenging the distribution under provisions of ERISA so that without her presence there could not be complete relief.

On September 29, 1997, First Trust moved for its dismissal from the case, an injunction against further suits, and attorney's fees and costs. It further argued that the award of fees should

be made out of the funds at issue, as is typical for interpleader suits. Both Brenda and Marvin's sons opposed First Trust's motion. The sons noted that the court had not yet ruled on Brenda's pending counterclaim or the transfer motion. They further argued that an award of attorney's fees would be improper given First Trust's bad faith conduct in the litigation, citing First Trust's selection of an improper venue and demands for attorney's fees in exchange for a settlement. Brenda, on the other hand, argued that First Trust had failed to deposit all the funds at issue into the court's registry. She also alleged that First Trust was an ERISA trustee, and that, as First Trust had violated various provisions of ERISA, it was not entitled to any attorney's fees.

On October 16, 1997, Brenda filed her answer, and asserted counterclaims against First Trust for breach of its fiduciary duties under ERISA. She also sought attorney's fees from First Trust under ERISA, 29 U.S.C. § 1132(g)(1).[2] In reply to Brenda's counterclaims, First Trust admitted it was the trustee, but asserted the named fiduciary was the president or other designee of the employee. In defense, First Trust stated it did not act as a fiduciary when it filed the interpleader complaint.

On November 12, 1997, the District Court for the District of Colorado rejected First Trust's argument that it was a claimant to the funds based on its demand for attorney's fees and held that venue in Colorado was improper under 28 U.S.C. § 1397 because none of the true claimants resided in Colorado. The court therefore ordered the case transferred to the Eastern District of Kentucky. The court denied as moot First Trust's motion to for dismissal and for an injunction and roughly $16,000 in attorney's fees. The Colorado court never ruled on Brenda's motion to join Kay as a defendant.

## B.  The Kentucky Proceedings

After the case was transferred to the Kentucky district court, First Trust tendered an additional $35,959.27 into the court registry because they were additional funds disputed in Brenda's counterclaims. This brought the amount of interpleaded funds to $341,418.55.

On April 7, 1998, Kay moved to intervene. First Trust did not oppose her motion to intervene, but did not explain why it failed to join her in the first place. On June 4, 1998, the Kentucky district court granted Kay's motion to intervene.

Having successfully intervened, Kay filed an answer and a counterclaim under ERISA. In her counterclaim she sought a declaratory judgment that she was entitled to all the proceeds of Marvin's account because she was his only designated beneficiary. She also sought her attorney's fees and costs pursuant to ERISA, 29 U.S.C. § 1132(g)(1). In response to Kay's counterclaim, First Trust argued it had been replaced as trustee and had no control or authority over the Plan assets. It also argued that the funds had already been deposited into the court's registry so that it therefore could not comply with an order directing it to pay funds to her.

On June 15, 1998, Kay moved for summary judgment. She argued there was no genuine issue of material fact that she was entitled to all the funds attributable to Marvin's pension plan account as the only designated beneficiary. Brenda opposed Kay's motion on a number of grounds.

On December 31, 1998, First Trust moved for summary judgment on Brenda's counterclaims and for attorney's fees against Brenda, arguing it was entitled to its fees under ERISA's fee-shifting provision, 29 U.S.C. § 1132(g)(1). On January 14, 1999, First Trust also moved separately to be

---

[2]Brenda also asserted a variety of state law cross-claims against the sons and a third-party complaint against the Plan and Elvin Bryant for benefits under the Plan, breach of ERISA fiduciary duties, and attorney's fees under ERISA.

dismissed from the interpleader action, for an injunction, and for attorney's fees.  It argued the court had authority to award it fees under the general rule that interpleading plaintiffs are entitled to attorney's fees and that the award should be from the interpleaded funds, as is the general practice.

On January 22, 1999, the district court granted Kay's motion for summary judgment, resolving the merits of the interpleader suit.  The court held that Kay was entitled to all of Marvin's pension benefits because she was his designated beneficiary.

Thereafter, Kay and the sons, along with the Plan and Elvin, jointly opposed First Trust's motion for dismissal.  They also opposed First Trust's request for attorney's fees, noting First Trust's improper choice of forum, its decision to file the action under the interpleader statute rather than ERISA, and its failure to name Kay as a defendant.  Lastly, they noted the inequity in awarding First Trust fees from Kay's benefits.  They asserted that it was First Trust's postures in the case that prolonged the litigation and made it more costly and difficult.  On January 29, 1999, Kay moved for final judgment and distribution of the Plan assets, as well as her attorney's fees in the amount of $8,813.69.  By separate motion, the sons also sought attorney's fees in the amount of $39,046.89.

First Trust objected to the attorney's fees affidavits filed by Kay and the sons.  As to Kay's, it insisted that Kay had not prevailed against First Trust, but against Brenda instead, so that she was not entitled to any fees.  First Trust also argued that it should not have to pay attorney's fees that Kay "incurred in the ordinary course of pursuing her claims" because it was not First Trust that caused the dispute over Marvin's pension benefits.

On April 23, 1999, the district court issued a series of four orders disposing of most of the remaining issues in the case.  In one order, the district court ruled that First Trust would be entitled to its attorney's fees as a disinterested stakeholder who "protected the interests of the fund's beneficiary and aided the parties in resolving their ongoing dispute over the decedent's estate."  In a second order, the court denied the sons' motion for attorney's fees.  In so doing, it found that the bank had "not engaged in culpable conduct or other acts constituting bad faith."   The court specifically rejected the sons' arguments that filing in the wrong venue or First Trust's attempt to settle evidenced bad faith.

In a third order issued on April 23, the district court granted First Trust's motion for summary judgment on Brenda's counterclaims.  Although it held that Brenda lacked standing since Kay was the proper owner of the funds, it nonetheless remarked in dicta that First Trust was not a fiduciary of the Plan because, under its terms, First Trust did not have discretionary control over the plan assets, citing 29 U.S.C. § 1002(21)(A).  The court also denied Brenda's request for attorney's fees because summary judgment was awarded to First Trust on all her claims.  The court then ordered Brenda to pay First Trust's attorney's fees.

Finally, in a fourth order, the district court granted Kay's motion for attorney's fees under 29 U.S.C. § 1132(g)(1), and ordered the clerk to disburse to her the funds from Marvin's pension plan that had been deposited with the court, but only after subtracting attorney's fees requested by First Trust.  Regarding Kay's fees, the court granted her attorney's fees, but limited her to only those fees accumulated in her efforts to intervene.

On May 12, 1999, Kay moved the court to reconsider its April 23 order awarding attorney's fees to First Trust, arguing that the anti-alienation provision in ERISA, 29 U.S.C. § 1056(d)(1), precluded an award out of the pension plan benefits.

Meanwhile, First Trust submitted its fee request in the amount of $68,588.91.  It argued that $12,455.72 of the fees it incurred were attributable directly to Brenda's counterclaim and should be paid by her.  It argued that the remainder, $56,133.19, should be paid from the funds deposited into the court.  In justifying its high requested award, First Trust laid the blame for the protracted

proceedings at the feet of the sons and Brenda. First Trust did not accuse Kay of improper conduct in the case, however.

Kay then submitted her fee request in the amount of $3,184.37, which reflected the court's order restricting her fees request to those incurred in intervening. She also requested an upward adjustment, as is done in civil rights cases, to reflect the success she obtained, arguing that an upward adjustment of 100% was appropriate. Her total request was therefore $6,368.74. Her attorney's affidavit acknowledged that some billing entries did not specify that work was done on behalf of Kay alone and may represent work also done for his other clients, the sons, Elvin, and the Plan. However, he averred that $1,000 was incurred for work done solely on Kay's behalf. He did not mention a contingency fee agreement.

On July 6, 1999, by agreed order, the district court ordered the pension plan benefits and interest to be disbursed to Kay, except for $56,133.19, the amount of attorney's fees still at issue. On July 29, 1999, by agreed order, the court dismissed all claims, counterclaims, and cross-claims among Brenda, the sons, Elvin, the Plan, and Kay.

On September 29, 1999, the court reversed itself regarding the award of fees to First Trust on April 23, 1999, granting Kay's motion for reconsideration based on ERISA's anti-alienation provision. In denying attorney's fees to First Trust, the court ruled that § 1056(d)(1)'s prohibition on the assignment or alienation of pension benefits barred an award of attorney's fees here.

On October 18, 1999, First Trust moved for reconsideration of the September 29 order, arguing that ERISA's anti-alienation provision did not apply because the funds had been deposited into the court's registry. Alternatively, First Trust argued that ERISA's provisions clearly allow for plan administration costs and attorney's fees. Thus, First Trust requested that the court reinstate its earlier decision of April 23, 1999.

On May 18, 2000, the district court reversed itself again, this time granting First Trust's motion for reconsideration. It concluded that § 1056(d)(1) was inapplicable on the ground that ERISA's anti-alienation provision was not implicated once pension funds are removed from the fiduciary responsibility of the plan manager. The court held that the deposit into the court's registry was "equivalent to" benefits having been paid to and received by the beneficiary, and therefore, a fee award would not be a right enforceable against the Plan. The district court further reasoned that an award was permissible notwithstanding the provision because the case had always been tried as an ERISA case, despite the fact that the complaint did not specifically mention ERISA, and Kay herself sought attorney's fees under § 1132. The court therefore held:

> The record, as detailed above, clearly shows that this case was practiced under § 1132 and that statute controlled the substantive disposition of the case. § 1132 does not bar an award of attorneys' fees such as those granted in the court's order of April 23, 1999 and, in fact, authorizes fee awards. 29 U.S.C. § 1132(g)(1). Thus, the court will reinstate its April 23, 1999 order granting First Trust attorneys' fees.

The court further remarked that ERISA expressly authorized plan assets to be used for plan administration costs in a number of provisions, citing 29 U.S.C. §§ 1103(c)(1) (authorizing plan assets to be used for plan administration costs), 1104(a)(1)(A)(ii) (to defray reasonable expenses of administering the plan), and 1108(c) (for compensating a fiduciary for services rendered in performance of his duties with the plan), and that these provisions permit a reasonable award of attorney's fees for service to the plan. The court concluded that because First Trust had filed the interpleader action as part of its plan administration duties, the lawsuit's costs were incurred as part of plan administration and it was therefore entitled to its fees. Finally, the court reiterated that Kay's award of fees was limited to the expenses of intervening.

On May 22, 2002, after a period of inaction by the court, Kay moved for distribution of her remaining assets still held by the court. First Trust had also moved for a decision on the amount of attorney's fees.

On July 3, 2002, the district court entered judgment, dismissed the case, and assessed fees and costs in a supplemental order. The order directed that First Trust be paid $53,555.29, plus interest, out of the funds in the court's registry. The order further directed that all sums remaining in the registry be disbursed to Kay Hamlin. It held that the amount requested by First Trust was reasonable as to time spent and hourly rates charged, but reduced First Trust's request to the extent that the fees sought trying to recover its attorney's fees were excessive. The court also shifted some of the amounts First Trust requested from Kay to Brenda because they were attributable to work pertaining to Brenda's counterclaims. Finally, the court offset First Trust's award by the amount awarded to Kay. The court determined that her fee award, which the court had previously limited to those fees associated with her efforts to intervene, amounted to $1,000 for her motion to intervene, answer and counterclaim. This amount was based on ten hours of work at an hourly rate of $100. In so doing, the court noted that Kay had failed to rebut the various objections raised by First Trust. Finally, the court ordered Brenda to pay $18,559.50 to First Trust.

Kay appeals.

## II. Analysis

In its final ruling of May 18, 2000, the district court reinstated its April 23, 1999 order granting First Trust attorney's fees under the interpleader statute. In its May 18, 2000 ruling, the district court also stated that the attorney's fees provision of the ERISA statute, § 1132(g), authorizes fee awards such as those granted in the April 23 order. Finally, the court held that the anti-alienation provision was not an impediment to the award of attorney's fees because ERISA itself includes exceptions to § 1056, expressly authorizing plan assets to be used for plan administration costs.

Kay challenges this holding on a number of grounds. First, she contends that the district court's award of attorney's fees to First Trust, payable out of her benefits, violates ERISA's anti-alienation provision. Kay also asserts that only a prevailing party may be awarded fees under § 1132(g). Further, she argues that the district court failed to consider the appropriate factors in awarding attorney's fees to First Trust, and in limiting those awarded to her.

First Trust counters that the anti-alienation provision does not apply after pension funds are removed from the fiduciary responsibility of the plan manager. In other words, it contends that § 1056(d)(1) is inapplicable once funds are no longer under the "control" of the Plan, having been deposited in the court's registry pursuant to 28 U.S.C. § 1335. First Trust further alleges that, as a trustee of the Plan, it was a fiduciary within the meaning of ERISA, and entitled to attorney's fees as part of its administrative duties. First Trust also maintains that the district court had discretion under both ERISA and statutory interpleader to award it fees.

Although these arguments raise a number of interesting and complex issues[3], we decline to address them today, as this matter is easily resolved under ERISA's attorney's fee provision, because First Trust is not entitled to attorney's fees in any event.

## A. Attorney's Fees

In an action by a plan participant, beneficiary, or fiduciary, the court, in its discretion, "*may* allow a reasonable attorney's fee and costs of action to *either* party." 29 U.S.C. § 1132(g)(1) (emphasis added). *See also Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 936 (6th Cir. 1996). This Court has rejected a presumption that attorney's fees should ordinarily be awarded to the prevailing plaintiff. *Id. See also Gibbs v. Gibbs,* 210 F.3d 491, 500-03 (5th Cir. 2000) (same; discussing precedent from other circuits).

We utilize a five-factor test in assessing whether the district court properly exercised its discretion in awarding fees:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

[3] Because we rule on alternative grounds, we do not need to address Kay's argument that § 1056(d) prohibits the award of attorney's fees in this case. However, we note that ERISA's anti-alienation provision does not specify when its protections come to an end. *See Guidry v. Sheet Metal Workers National Pension Fund*, 39 F.3d 1078, 1080 (10th Cir. 1994) (en banc) ("The [anti-alienation] provision focuses on benefits . . . but is silent on whether the term is meant to include benefits in the nature of the distributed funds no longer within the fund and held by the plan participant or beneficiary."). This Court has adopted the Tenth Circuit's view that the provision no longer applies "once the benefits have been released to the properly designated beneficiary." *Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 679 (6th Cir. 2000). *See also In re Weinhoeft*, 275 F.3d 604, 606 (7th Cir. 2001) ("A pension trust is inalienable no matter how strong the creditor's equitable claim to the money, and funds not in pension trusts are alienable no matter how much the debtor would prefer to keep the value of creditors' hands. The proof of this is the rule that as soon as funds are *withdrawn* from a plan, creditors can reach them freely."); *Robbins v. DeBuono*, 218 F.3d 197, 203 (2d Cir. 2000) ("Section 1056(d)'s requirement that pension plans contain a provision against assignment or alienation of benefits does not read comfortably as a prohibition against creditors reaching pension benefits once they have left the hands of the administrator."). *Cf.* 26 C.F.R. § 1.401(a)-13(c)(1)(ii) (defining "assignment" or "alienation" as "[a]ny direct or indirect arrangement (whether revocable or irrevocable) whereby a party acquires from a participant or beneficiary a right or interest enforceable *against the plan* in, or to, all or any part of a plan benefit which is, or may become, payable to the participant or beneficiary" (emphasis added)).

Although, contrary to First Trust's assertion, it is doubtful that the interpleaded funds could be considered as having "been released to the properly designated beneficiary" for purposes of § 1056(d) once they were merely deposited in the court's registry, the district court determined that Kay Hamlin was the proper beneficiary in January of 1999, approximately three months prior to the court's award of attorney's fees to First Trust. In other words, although not physically in her possession, at the time of the fee award, the funds had been "distributed" to Kay because there had been a determination that the assets belonged to Kay. Thus, as the district court ultimately held, imposition of a constructive trust was not improper under § 1056(d).

We also need not definitely resolve whether First Trust is a "fiduciary" as defined by ERISA, 29 U.S.C. § 1002(21)(A) (defining a fiduciary as one who exercises "discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of assets," "renders investment advice" for compensation, or "has any discretionary authority or discretionary responsibility in the administration of such plan"). *Cf. Metropolitan Life Ins. Co. v. Marsh*, 119 F.3d 415, 418 (6th Cir. 1997) (noting that "when an insurance company administers claims for an employee welfare benefit plan *and has the authority to grant or deny the claims,* the company is an ERISA 'fiduciary' under 29 U.S.C. § 1002(21)(A)(iii)"; internal quotation marks omitted; emphasis added). The Plan documents state that First Trust is a directed, "nondiscretionary" trustee under the Plan, and is not the named fiduciary. *See* ¶¶ 10.03(B) and (D); Adoption Agreement § 1.02. Furthermore, First Trust repeatedly disclaimed being a fiduciary, and has insisted it is merely a directed trustee. However, as stated, we need not decide this question because First Trust is not entitled to attorney's fees under ERISA in any event.

*Id.* at 936-37 (quoting *King*, 775 F.2d at 669).   These factors are not statutory and therefore not dispositive.  Rather, they are simply considerations representing a flexible approach.  *Id.* at 937.

We review the district court's determination of an attorney's  fee award under § 1132(g) for an abuse of discretion.  *Id.* at 939.   "An abuse of discretion exists only when the court has the definite and firm conviction that the district court made a clear error of judgment in its conclusion upon weighing relevant factors."  *Id.* (quoting *Sec. of Dept. of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985)).

## 1. First Trust

### a. Bad Faith

The district court held that First Trust had not engaged in bad faith or culpable conduct.  We disagree.  It is undisputed that First Trust filed in the wrong venue, failed to join Kay as a party even though it knew of her existence as a claimant, and then got embroiled in a dispute with the various claimants, which further entangled it in the litigation, by demanding that the claimants agree to stipulate that they be enjoined from asserting claims against First Trust relating to the funds deposited with the court.  Had First Trust properly followed the interpleader procedures, sued in the proper venue, and impleaded all of the claimants of which it was aware, as it was legally obligated to do, it would not have gotten entangled in the litigation.

We can discern no valid reason why First Trust did not join Kay as a party, since it clearly knew that she was the designee, as evidenced by its attachment to the complaint.[4]   Furthermore, First Trust cannot excuse the fact that it proceeded as it did on the basis that it mistakenly believed that under a particular treasury regulation, Bryant's marriage to Brenda Bryant invalidated the earlier designation of his first wife as beneficiary; that is precisely the sort of determination which is supposed to be made in the course of litigation after the parties are interpled and First Trust, as disinterested stakeholder, is out of the case.

We also cannot fathom why First Trust did not join Kay once Brenda moved for her to be joined.  Kay was needlessly put to the expense of having to move to intervene.  More importantly, First Trust never offered an explanation for why it failed to join Kay as a defendant.  Full disclosure in the complaint of her status as the designated beneficiary is simply not equivalent to joining her as a defendant, because it shifted the onus to Kay.  Likewise, First Trust's decision not to oppose Kay's motion to intervene is not equivalent to joining her as a party, as First Trust lamely implies.  At a minimum, First Trust is culpable for this pointless failure to add Kay initially and for repeatedly failing to correct it.

We also agree with Kay that the court abused its discretion by not basing its award on First Trust's failure to file in the proper venue.  First Trust's contention that a request for attorney's fees transforms a purportedly disinterested stakeholder into a true claimant within the meaning of the

---

[4] It has been intimated that First Trust failed to join Kay because of concerns about destroying diversity.  First Trust's complaint invoked the interpleader statute, 28 U.S.C. § 1335, a source of jurisdiction independent of federal question jurisdiction or diversity jurisdiction.  *See* 4 MOORE'S FEDERAL PRACTICE, *supra*, § 22.04[2][b], at 22-56.  Moreover, the diversity required under § 1335 is only minimal diversity, i.e., only two or more claimants need to be of diverse citizenship.  *Id.* at 22-57 (citing *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967)).  Here, minimal diversity was met with or without Kay's presence so that the court had jurisdiction under § 1335.  Brenda was a citizen of Georgia, Lorren was a citizen of North Carolina, and Lee was a citizen of Kentucky.  Kay's Kentucky citizenship did not defeat the minimal diversity requirement because there were already more than two adverse claimants of different citizenship. Also, courts look at the citizenship of the claimants, not the stakeholder.  *Id.*  Therefore, First Trust's Colorado citizenship was not relevant.

interpleader statute is unreasonable.[5]  First Trust did not file this action under ERISA, and indeed repeatedly disclaimed that it was a fiduciary under ERISA.  For example, when Brenda filed her counterclaim against First Trust, it stated that it had not acted as a fiduciary when it filed the interpleader complaint.  Furthermore, First Trust is a sophisticated entity, not unfamiliar with the concepts of interpleader, disinterested stakeholder, and claimant.[6]  Finally, the venue provision of the interpleader statute is clear on its face.[7]

First Trust's seemingly inexplicable litigation strategy may perhaps best be understood by the following letter sent by First Trust's counsel to counsel for Brenda and counsel for the sons on May 15, 1997:

> As I have discussed with each of you, First Trust is willing to cooperate with you to reach an agreement whereby the case can be transferred from Colorado to the federal district court in Kentucky.  This would eliminate the need for you to hire local counsel here in Colorado.  My client is willing to agree to such a transfer, provided that (i) First Trust receives all of its attorneys' fees, (ii) the court enters a permanent injunction preventing any of the defendants from filing or pursuing any claims against First Trust in state or federal court, and (iii) First Trust is dismissed with prejudice from the interpleader action.  I have reached such an agreement in other cases.  I have enclosed copies of pleadings from another interpleader action, *First Trust Corp. v. Olesko*, which show the specifics of the agreement I am proposing.

We think the foregoing attempt to work a deal with Marvin's sons to voluntarily transfer venue to Kentucky in exchange for attorney's fees and a signed release dispels any assertion by First Trust that its actions were innocent and not calculated.  Thus, its litigation tactics in this case cannot be dismissed as an "honest mistake."  *See Foltice*, 98 F.3d at 937 (stating that "[h]onest mistakes are bound to happen from time to time, and fee awards are likely to have the deterrent effect where deliberate misconduct is in the offing").  In light of this letter, First Trust's claim that it was merely seeking to extract itself from a complicated and potentially litigatious situation, given the multiple requests for distributions and conflicting court orders, is simply untenable.

Furthermore, although First Trust apparently sought fees under § 1132(g)(1), it has never identified any fault on Kay's part, even though the assets from which the district court deducted First Trust's attorney's fees were indisputably Kay's.  In its request for fees, First Trust claimed that

---

[5]First Trust points out that the Colorado district court made no findings of bad faith, as if that should be dispositive.  It is clear that the court did not make such findings because the merits were moot once it ruled that venue was improper in Colorado.  Accordingly, the lack of a bad faith finding by the Colorado district court is irrelevant.

[6]Interpleader is "a procedural device used to resolve conflicting claims to money or property."  4 James Wm. Moore et al., Moore's Federal Practice § 22.02[1] at 22-7 (3d ed. 2002) [hereinafter MOORE'S FEDERAL PRACTICE].  *See also* 7 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1702, at 533 (3d ed. 2001) (viewing interpleader as "a remedial joinder device") [hereinafter FEDERAL PRACTICE AND PROCEDURE].  The Federal Interpleader Act grants district courts jurisdiction to resolve certain kinds of disputes over money or property, *see* 28 U.S.C. § 1335, and allows the stakeholder to deposit the disputed funds with the court or post bond pending adjudication on the merits of the underlying dispute between the claimants as to who is the rightful owner.  *See* 28 U.S.C. § 1335(a)(2).  "Interpleader originally was designed to protect the stakeholder . . . from the vexation of multiple suits and the possibility of multiple liability that could result from adverse determinations in different courts."  FEDERAL PRACTICE AND PROCEDURE, *supra*, at 533-35 (footnotes omitted).

[7]28 U.S.C. § 1335(a)(1) provides that district courts have original jurisdiction over interpleader actions when two or more adverse claimants of diverse citizenship claim entitlement to disputed money or property.  Under 28 U.S.C. § 1397, venue lies "in the judicial district in which one or more of the claimants reside."

$56,000 in fees stem from litigation thrust upon it principally by the sons and Brenda. The trouble is that First Trust was already awarded attorney's fees against Brenda for fees incurred in litigating Brenda's counterclaim and those fees are not at issue in this appeal. All references to Brenda's counterclaim in First Trust's present fee request, therefore, are wholly irrelevant and disingenously presented. *See id.* (occasionally mentioning Brenda's counterclaim in reference to its request for fees from the assets earmarked for Kay).

As for fees incurred in litigating against the sons, First Trust remarkably appears to attribute these funds to litigation surrounding the venue issue in Colorado. *See id.* at 972-75. It strains credulity to consider even for a moment First Trust's argument that it should be awarded attorney's fees for litigation that inevitably resulted from its own obviously erroneous choice of forum. In any event, it cannot be contended that the litigation pursued by the sons–even if proven to be in bad faith (which First Trust did not demonstrate)–is an appropriate basis for an award of attorney's fees against *Kay*, rather than against the sons individually.

### b. Ability to Pay
### c. Deterrence
### d. Common Benefit

These three factors also weigh against the district court's ruling requiring Kay to pay First Trust's attorney's fees. Kay demonstrated that she has a net worth of less than $500,000. There cannot possibly be any deterrent effect in awarding a fee against Kay, since Kay *did nothing wrong*. Kay merely sought benefits that were rightfully hers, and moreover, properly employed the judicial machinery in seeking the funds. *See Gibbs*, 210 F.3d at 505 (holding that district court erred in using deterrent factor as a sword to discourage beneficiaries from pursuing a claim, "rather than as this factor was intended to be used, as a shield, to protect beneficiaries from the fear of having to pay to pursue an important ERISA claim in the event of failing to prevail"). Further, the award to First Trust does not confer a common benefit, because First Trust is no longer the directed trustee of the Plan.

### e. Relative Merits of Position

Quite simply, Kay prevailed–cleanly, unequivocally, and absolutely. First Trust has taken the losing position in virtually every significant issue involved in this case, from the venue matter to the valuation matter, to whether Kay should be joined, and even to advising the court on which claimant had superior rights to the benefits,[8] not to mention the fact that First Trust is aggressively seeking its attorney's fees when it knew or should have known from the outset that the source of reimbursement for its fees should be from "the Trust Fund" or the employer. Apart from merely filing the interpleader suit for a court to resolve the ownership dispute, First Trust cannot be said to have taken meritorious positions.

Furthermore, we cannot help but note the considerable inequity of extracting from Kay's benefits First Trust's attorney's fees that were related to virtually the entire proceedings in this case – fees that First Trust jacked up with numerous arguments, as this opinion reflects. Yet the district court made no attempt to limit fees when they were related to issues on which First Trust plainly lost, like the venue issue and the valuation issue, matters that did not even involve Kay because she

---

[8]First Trust had repeatedly "advised" the courts below about the merits of the action. For example, First Trust attached to its filings treasury regulations that it argued dictated that Kay could not assert a claim because beneficiary designations are invalidated by marriage. It also argued that Brenda was the rightful owner given her status as the surviving spouse. Of course, on the merits, the court held that Kay was entitled to all the pension plan benefits, not Brenda.

was not a party until after the case had been transferred to Kentucky and she moved to intervene.[9] Indeed, the award of such substantial fees was particularly inequitable given that First Trust did not accuse Kay of improper conduct. The court seemed oblivious to the fact that First Trust was a sophisticated entity that could foresee and plan for interpleader suits, unlike Kay, an individual who likely initially had no knowledge of her rights under ERISA, probably did not know about the Plan, and had to hire an attorney to protect her interests. In awarding fees to First Trust, the court also seemed oblivious to the glaring omission by First Trust in failing to join Kay as a defendant, which undermined the very purpose of bringing an interpleader suit – to join all the claimants in one forum to avoid the vexation of multiple suits and liability for disbursing the funds to the wrong person.

Furthermore, in its May 19, 1999 fee request, First Trust claimed that $56,000 in fees stemmed from litigation thrust upon it principally by the sons and Brenda, not Kay.

In short, all of the equities favor Kay, and all five *Foltice* factors weigh against an award of attorney's fees to and costs to First Trust. We therefore hold that the district court abused its discretion in awarding any attorney's fees to First Trust. Had First Trust behaved as a truly disinterested stakeholder, it would have been reasonable to award it the $2700 in attorney's fees for the cost of bringing the interpleader action. However, given its actions throughout this litigation, we see no reason why First Trust should not be required to bear all of its own costs.

We now consider whether Kay was entitled to all of her attorney's fees.

### 2. Kay

The first and fifth *Foltice* factors clearly favor an award to Kay, for the reasons discussed above. As the district court found, First Trust does not contest that it has the ability to pay a fee award. And, as the district court stated, "such an award may help to ensure that designated beneficiaries are included in future suits, making such suits simpler to litigate and more likely to protect the interests of such beneficiaries." An award to Kay will hopefully serve to deter First Trust from litigating in this manner in future cases. Finally, although only Kay will benefit directly from a fee award, a common benefit will be conferred upon future litigants in Kay's shoes vis-a-vis First Trust.

Thus, we hold that the district court committed a clear error in judgment in limiting Kay's request for attorney's fees. Without explanation, the district court limited Kay to the fees and expenses associated with her efforts to intervene. The court thereby prohibited the rightful beneficiary from pursuing fees related to all issues pertaining to her claim, including protecting herself from First Trust's improper requests for attorney's fees which she would not have had to incur but for First Trust's litigating tactics. In creating this limitation, the court seems to have been persuaded by First Trust's argument that it should not have to pay attorney's fees to a claimant that are "incurred in the ordinary course of pursuing her claims." For all of reasons discussed, First Trust's conduct took the proper claimants well beyond the ordinary course of interpleader actions. We therefore hold that the district court's limitation on Kay's fee request was clearly an abuse of discretion requiring reversal.

---

[9] It seems clear that Brenda's efforts resulted in significant advantage to Kay, as it was Brenda that sought Kay's joinder. It was also Brenda's efforts that resulted in augmentation of the interpleaded assets with additional funds that should have been credited to Marvin's account, but which were not initially included. First Trust, after all, only tendered the additional funds because they were the subject of Brenda's counterclaims.

### B. Interpleader

The district court also awarded attorney's fees under the interpleader statute.[10] The federal interpleader statute consists of three separate provisions pertaining to subject matter jurisdiction, 28 U.S.C. § 1335; venue, 28 U.S.C. § 1397; and service of process, 28 U.S.C. § 2361. The interpleader statute does not contain an attorney's fee provision. *See* 28 U.S.C. § 1335. Courts have merely relied on language in 28 U.S.C. § 2361, which provides for service of process and personal jurisdiction for statutory interpleader, to the effect that the "district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, *and make all appropriate orders to enforce its judgment,*" to award attorney's fees. 28 U.S.C. § 2361 (emphasis added). FEDERAL PRACTICE AND PROCEDURE, *supra,* § 1719, at 674. 4 MOORE'S FEDERAL PRACTICE, *supra,* § 22.06, at 22-98.[11] Despite the lack of explicit statutory authorization, "modern federal practice follows the traditional equity rule that gives the trial court discretion to allow a disinterested stakeholder to recover attorney's fees and costs from the stake itself." *Id.* at 22-98 to 22-99 & n.4.

Again, at a minimum, for all the reasons discussed in this opinion, equity does not favor an award of attorney's fees to First Trust, and the district court abused its discretion in holding otherwise. Moreover, such a result on equitable grounds would be inconsistent with our decision that First Trust is not entitled to attorney's fees under an express statutory provision that authorizes fees in certain circumstances.

### C. Contingency Fees

As for Kay's request to have her contingency fee agreement considered, it is without merit. First, she did not raise her contingency agreement until long after the court limited her fees to those incurred in intervening. Moreover, her attorney's fee affidavit acknowledged that calculation of attorney's fees is made by the lodestar method even when there is a contingency agreement. Even if she properly presented this issue below, our law is clear that fee awards may not be enhanced for the risks of contingency. *See Drennan v. General Motors Corp.*, 977 F.2d 246, 253 (6th Cir. 1992) (citing *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992)); *see also Murphy v. Reliance Standard Life Ins. Co.*, 247 F.3d 1313, 1315 (11th Cir. 2001).

Accordingly, on remand the district court is to reconsider Kay's initial request for attorney's fees, if she is able to substantiate the hours worked solely on her behalf, without limiting them to her efforts to intervene.

---

[10]The district court did not cite any provision of the federal interpleader statute in support of its authority to award attorney's fees, but merely relied on case law. Specifically, it cited *Prudential Ins. Co. of America v. Boyd*, 781 F.2d 1494, 1497 (11th Cir. 1986), for the proposition that "in an interpleader action costs and attorneys' fees are generally awarded . . . to the plaintiff who initiates the interpleader as a mere disinterested stake holder." *Boyd* also does not refer to the statutory provision upon which this proposition is based.

[11]It seems to us that the "make all appropriate orders" clause in 28 U.S.C. § 2361 is a slender reed on which to find authority to award attorney's fees to interpleading plaintiffs as a matter of course. Congress well knows how to make explicit whether federal courts have authority to award attorney's fees, as ERISA's fee-shifting provision demonstrates. *See* 29 U.S.C. § 1132(g)(1). In any event, the Supreme Court has made clear that in the United States the prevailing litigant is ordinarily not entitled to collect attorney's fees under our so-called "American Rule." *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975). Indeed, it is the domain of Congress to determine the circumstances under which attorney's fees are to be awarded. *Id.* at 262. When Congress has provided the remedies for a cause of action and the act does not explicitly provide for attorney's fees, courts are not to imply them. *Fleischmann Distilling Co. v. Maier Brewing Co.*, 386 U.S. 714, 720 (1967). Under § 2361, Congress specified the remedies available in an interpleader action (determination of ownership, discharge of the interpleading plaintiff from liability, injunction, and orders necessary to enforce its judgments), but did not explicitly provide for attorney's fees.

## D.  Fees and Costs on Appeal

Finally, Kay argues she is entitled to her attorney's fees and costs on appeal.  An award of attorney's fees pursuant to 29 U.S.C. § 1132(g) may also be made for attorney's fees incurred on appeal. *See King*, 775 F.2d at 670; *see also Schwartz v. Gregori*, 160 F.3d 1116, 1119 n.5 (6th Cir. 1998).  The analysis we undertook above regarding the appropriateness of awarding her attorney's fees applies equally to whether Kay is entitled to her attorney's fees on appeal.  Accordingly, on remand,  the district court is directed to award reasonable attorney's fees to Kay in connection with this appeal in an amount to be determined by the district court.

## III.  Conclusion

For the foregoing reasons, we **REVERSE** the award of attorney's fees to First Trust.  We also **REVERSE** the award of attorney's fees to Appellant Kay Hamlin only to the extent that she was improperly limited to her efforts to intervene.  Finally, we award the fees and costs of this appeal to Appellant and **REMAND** this matter to the district court for an expeditious determination.

―――――――――

**DISSENT**

―――――――――

SUTTON, Circuit Judge, dissenting. When a man marries two different women twice and is murdered by the brother of his second wife, it is perhaps unsurprising when a dispute arises about the proper beneficiary of his pension assets and it is perhaps unsurprising when the parties fail to resolve that dispute quickly. In that sense, there are no surprises here. What surprises me is that the majority declines to give deference to the long-suffering district court judge given the thankless task of presiding over this internecine dispute and designates the only party found by the district court to have acted in good faith throughout this litigation frenzy—the bank—as the villain in the saga. I respectfully dissent.

I.

Soon after Mr. Bryant's death, First Trust received competing demands on his plan assets—first from Brenda Fuston Petrey Bryant (Mr. Bryant's second wife), then from Lorren and Lee Bryant (Mr. Bryant's two sons). Over the next year and a half, First Trust received conflicting orders from the Whitley County, Kentucky, probate court about how Mr. Bryant's pension plan assets should be distributed. An August 1995 order provided that one-third of the pension plan assets should be distributed to Brenda Bryant and two-thirds should be distributed to the two sons. In March 1996, however, the Kentucky probate court issued a new order, this time directing First Trust to distribute one-half of the assets plus $2,500 to the two sons, which was to be divided equally between them, and to hold the remaining assets (slightly less than half) pending further court order. No party, the court further instructed, was permitted to have access to the remaining assets "except by written Court Order executed by a Judge of competent jurisdiction." JA 221.

In January 1997, First Trust notified the plan administrator, Elvin Bryant, that it had received conflicting demands and conflicting state-court orders about Mr. Bryant's pension plan assets. Unless the dispute resolved itself soon, First Trust told Elvin Bryant, it would "have no alternative than to interplead the assets in question into a court of proper jurisdiction at an expense to the account and possible additional expense to the ultimate beneficiary." JA 259 (emphasis removed).

A few months later, on May 9, 1997, First Trust filed an interpleader complaint under the federal interpleader statute, 28 U.S.C. § 1335, in the United States District Court for the District of Colorado. The complaint asked the Colorado district court to determine who was entitled to the disputed funds. First Trust believed that Colorado was a proper venue for the action because First Trust is a Colorado corporation with its principal place of business in Colorado and because the plan assets were held in Colorado.

Conspicuously missing from the dispute up to this point, however, was Mr. Bryant's first wife, Kay Hamlin (formerly Kay Bryant). Her absence was conspicuous because First Trust had a beneficiary designation form from July 1982 designating "Kay Bryant" as the primary plan beneficiary. JA 65. In its complaint, First Trust acknowledged that Mr. Bryant had designated Kay Bryant as the primary beneficiary in 1982 and attached a copy of the 1982 beneficiary designation form to the complaint.

First Trust had several reasons for not naming Kay Bryant in the complaint, none of which (they now acknowledge) turns out to have been particularly sound. None of the Kentucky court orders issued to First Trust mentioned Kay Hamlin (or Kay Bryant, for that matter) and Ms. Hamlin had made no claim to the assets. First Trust knew that Mr. Bryant had divorced Kay Bryant in 1985 and was married to Brenda Bryant at the time of his death. First Trust had no information regarding

Hamlin—her current address or whether she was even alive. It is unclear from the record whether First Trust even knew her maiden name, as the only information provided by the beneficiary designation form was the name "Kay Bryant." Lastly, First Trust believed that a Treasury Regulation, 26 C.F.R. § 1.401(a)-20, made Hamlin irrelevant because, under the regulation, Mr. Bryant's marriage to Brenda Bryant invalidated the earlier designation of his first wife. *See id.* at Q-25, A-25. This view turned out to be incorrect because Brenda Bryant had been married to Mr. Bryant for less than a year at the time he died, which meant that the initial designation was still valid under the regulation. *Id.*

In accordance with the interpleader statute, First Trust deposited all of the plan assets attributable to Mr. Bryant—$305,459.28—into the Colorado district court's registry. This first deposit represented Bryant's share of the plan assets as of June 30, 1996 (each plan participant's individual interest in the plan's assets was computed once annually, on June 30th each year). Later, First Trust made a second deposit for earnings that were not calculated until June 30, 1997.

In filing the complaint, First Trust incurred modest fees and costs—about $2,700. Soon after filing the complaint, First Trust proposed to the claimants that they stipulate (1) to dismiss First Trust from the case, (2) that the claimants be enjoined from asserting claims against First Trust related to the funds deposited with the court and (3) that First Trust be awarded its $2,700 in attorney fees. *See, e.g.*, *Metrop. Life Ins. Co. v. Marsh*, 119 F.3d 415, 417 (6th Cir. 1997) (ERISA fiduciary "filed a complaint of interpleader" and the district court "dismissed [the fiduciary] after [it] deposited . . . the proceeds . . ., plus interest, with the clerk of the court"). First Trust offered, in exchange, to stipulate to having the case transferred to the Eastern District of Kentucky, where the claimants felt the suit belonged in the first place. The two Bryant sons, however, called the entire proposal "blackmail" and refused to accept it. JA 133.

Matters quickly went downhill from there. First Trust incurred additional expenses responding to the two sons' motion to dismiss the interpleader action outright, responding to Brenda Bryant's document requests, participating in a scheduling conference and preparing a scheduling order, and filing a motion for the court to order the dismissal, injunction and attorney fees that the claimants refused voluntarily to accept. Making matters worse, Brenda Bryant filed a counterclaim against First Trust alleging breach of fiduciary duties under ERISA, state-law cross-claims against the two sons relating to Bryant's estate and a third-party complaint against Elvin Bryant and W.D. Bryant & Sons, Inc., as plan administrators, for breach of fiduciary duties. Brenda Bryant also filed a motion to have Kay Bryant joined as a defendant to ensure that all claims could be finally resolved in one proceeding, a motion that First Trust did not oppose. Before all was said and done in Colorado, First Trust had incurred at least $16,545 in fees and costs.

In November 1997, the Colorado district court determined that venue was indeed improper in Colorado. Under the interpleader statute, an interpleader action must "be brought in the judicial district in which one or more of the claimants reside." 28 U.S.C. § 1397. Since First Trust was not a claimant and since none of the claimants resided in Colorado, the court transferred the case to the Eastern District of Kentucky. The court also denied as moot First Trust's request to be dismissed from the case and for its roughly $16,000 in attorney fees. The Colorado court never ruled on Brenda Bryant's motion to have Kay Bryant joined as a defendant. A few months after the transfer, however, Kay Hamlin filed a motion to intervene as a defendant, which First Trust did not oppose and which the Kentucky district court granted.

In trying to extricate itself from the dispute, First Trust fared no better in Kentucky than it had in Colorado. Among other things, First Trust was forced to participate in scheduling and discovery conferences, to produce two First Trust witnesses for deposition, to respond to written discovery, to litigate the issue of whether it should be dismissed from the case and ultimately to litigate over attorney fees. As a result of these developments, the vast majority of the fees and costs

incurred by First Trust in this litigation were incurred after the case was transferred to Kentucky and after Kay Hamlin had intervened.

As late as January 1999, the same month that the district court ultimately concluded Kay Hamlin was entitled to the plan assets, Hamlin and the two sons (along with W.D. Bryant & Sons, Inc., and Elvin Bryant, the plan administrators) filed a brief arguing that First Trust should not be dismissed from the case because: (1) "the parties [should] have a full opportunity to file additional claims against [First Trust] if they desire"; (2) "certain of the defendants intend to ask the Court for an award of attorney fees and costs against First Trust, and because costs and expenses continue to accrue, they have no way of knowing what the total amount will be"; and (3) "First Trust and its employees are important witnesses in this case." JA 791. As for First Trust's attorney fees, the same brief argued that First Trust was entitled to no attorney fees because First Trust filed the action in an improper venue and failed to name Kay Hamlin as a defendant. The poorly drafted complaint, the brief argued, "forc[ed] [Hamlin] to incur additional attorney fees in having to intervene in the case once it was transferred here." JA 793.

After deciding in January 1999 that Kay Hamlin was entitled to all of the pension plan assets, the district court sought to bring the dispute to a close. To that end, on April 23, 1999, the district court issued four orders in the case. The first order addressed First Trust's motion for dismissal, for an injunction prohibiting the parties from bringing any claims against First Trust relating to the pension plan assets and for attorney fees. The court granted the injunction and First Trust's motion for attorney fees, but deferred dismissal until the attorney fees had been calculated. In granting First Trust's motion for a fee award, the court determined that "[i]n bringing this interpleader action, [First Trust] protected the interests of the fund's beneficiary and aided the parties in resolving their ongoing dispute over the decedent's estate." JA 947. Accordingly, the court awarded attorney fees to First Trust as the prevailing party in an interpleader action and ordered briefing by the parties on the proper amount of the award.

The second order denied the two sons' motion to require First Trust to pay their attorney fees. In doing so, the district court applied this Court's five-factor test for the award of attorney fees in an ERISA action, which instructs district courts to consider: (1) the opposing party's culpability or bad faith; (2) the opposing party's ability to pay; (3) the deterrent effect of an award; (4) whether the party requesting the fees sought to confer a common benefit or resolve significant legal issues regarding ERISA; and (5) the relative merits of the parties' positions. *Foltice v. Guardsman Products, Inc.*, 98 F.3d 933, 936–37 (6th Cir. 1996). Consistent with these considerations, the court made the following findings:

> First, the bank [First Trust] has not engaged in culpable conduct or other acts constituting bad faith. While this action was initially filed in an improper venue, there is no evidence that the bank was motivated to file this suit in Colorado by improper considerations or that the filing constituted deliberate misconduct. Had there been proof of such conduct, the District Court in Colorado could have made such findings or dismissed the suit. The court made no such findings and instead transferred the case to this court. Likewise, the bank's offer to stipulate to a different venue in exchange for its dismissal from the suit cannot be called, as the defendants contend, "extortion" or serve as evidence of bad faith. . . . Additionally, the bank's early recommendations concerning the proper recipient of the pension funds were mistaken, but there is no evidence that they were made in bad faith. . . . The bank's original choice of venue and perhaps inartfully pled complaint do not appear to be deliberate acts, let alone misconduct.

JA 950–51.

The third of the April 23rd orders (1) instructed the clerk to disburse the pension plan funds to Kay Hamlin, less First Trust's attorney fees, and (2) determined that Kay Hamlin's attorney fees should be paid by First Trust. The court explained its decision to grant Kay Hamlin attorney fees as follows, again applying the five *Foltice* factors:

> The court will grant Kay Hamlin's attorney's fees, but only those fees that reflect her expenses in this action. . . . First, it is unclear why First Trust Corporation would not include the individual listed as the designated beneficiary in the interpleader suit that was intended to resolve claims to the pension assets in this case. While Kay Hamlin had not stated a claim to the assets, her designation as beneficiary should have alerted First Trust Corporation to the need to include her in any suit that sought to award the pension assets to their legal claimant. Second, the bank has not claimed that it cannot afford to pay such fees. Third, such an award may help to ensure that designated beneficiaries are included in future suits, making such suits simpler to litigate and more likely to protect the interests of such beneficiaries. The last two factors of *Foltice* do not weigh for or against either party. Thus, as the balance of the factors weigh in favor of an award of attorney's fees, the court will grant such fees. The awarded attorney's fees, however, are limited to only those accumulated in the movant's efforts to intervene in this case. The actions of First Trust after Kay Hamlin was joined as an intervening defendant do not warrant an award of attorney's fees.

JA 963–64.

The fourth order granted First Trust summary judgment on Brenda Bryant's counterclaims and required Brenda Bryant to pay First Trust's attorney fees on those claims.

On July 6, 1999, the parties agreed to an order releasing over $300,000 of the $361,000 in the court's registry to Kay Hamlin. The court retained the remaining $56,133.19—the amount of attorney fees claimed by First Trust—until that issue could be finally decided.

For the next year or so, predictably enough, the court entertained a series of motions for reconsideration and clarification. Kay Hamlin moved the court to reconsider the award of attorney fees to First Trust on the newly raised ground that it violated ERISA's anti-alienation provision, which prohibits "benefits provided under [an ERISA] plan" from being "assigned or alienated." 29 U.S.C. § 1056(d)(1). On September 29, 1999, the court granted the motion for reconsideration, reversing its earlier award of attorney fees to First Trust. Two weeks later, however, First Trust requested that the court reverse course again, which the court did in a May 18, 2000, order. "ERISA's anti-alienation provisions," the court held in that order, "do not come into effect after pension funds are removed from the fiduciary responsibility of the plan manager." JA 1096. Since First Trust's attorney fees would be paid from funds already distributed from the plan and deposited with the court, the "fee award will not generate a right enforceable against the ERISA-governed pension plan, rendering ERISA's anti-alienation provisions moot." JA 1096. Moreover, the court determined, even though First Trust filed the complaint under the interpleader statute, the case "was practiced" as an ERISA action under § 502 of ERISA, 29 U.S.C. § 1132, a statute that "authorizes fee awards." JA 1098. The court reinstated First Trust's fee award.

From May 2000 through July 2000, the parties filed fee affidavits and objections concerning the amount and reasonableness of the fees.

On July 3, 2002, the court issued a final ten-page order determining the amount and reasonableness of First Trust's fees. The court held that "the amount of time spent on this litigation" by First Trust's attorneys, "given its complexity and length," was "reasonable" and that the rates

charged by First Trust's attorneys were reasonable. JA 1221. The court divided its analysis into two time periods. The first related to work before April 23, 1999, when the court ruled that the pension plan assets should be distributed to Kay Hamlin. For that period, the court made two reductions from First Trust's request for fees: It disallowed fees incurred by First Trust in "seeking to recover its attorneys' fees" for this period of time, JA 1224, and ordered that Brenda Bryant pay all fees incurred by First Trust in defending her counterclaim against the bank. The final total fees for the pre-May 1999 period came to $43,070.66.

From May 1999 onward, First Trust claimed an additional $12,429.63 in fees. The court acknowledged that these fees, in some sense, all related to First Trust's pursuit of its own fees. But they were nevertheless reasonable, the court held, because First Trust incurred them in response to Hamlin's motion for reconsideration, which ultimately proved unsuccessful. The court did, however, reallocate some of these fees to Brenda Bryant, reducing First Trust's fee award from the pension plan assets in the court's registry for this period to $11,484.63. Added to the amount for pre-May 1999, the total fees came to $54,555.29.

The court, lastly, reduced this total fee award by the amount of attorney fees that First Trust owed Hamlin. Hamlin claimed $6,368.74 as the cost of her having to intervene in the lawsuit. This included a proposed 100% upward adjustment. Although First Trust challenged the amount of these fees, Hamlin never responded to First Trust's objections, except to reiterate her request for $6,368.74. (Hamlin, it bears adding, responded to other objections raised by First Trust during the fee dispute.) The district court concluded that Hamlin waived her right to the $6,368.74 in fees but nevertheless awarded her $1,000 for the costs of intervention. Subtracting that amount from First Trust's award, the total to be paid to First Trust out of Hamlin's funds in the court registry came to $53,555.29.

## II.

In the face of this unflattering saga, I disagree with the majority's conclusion that the district court abused its broad discretion to award fees to First Trust. As the facts make clear, First Trust tried to extricate itself from the case after incurring only $2,700 in attorney fees—and continued to try to extricate itself from the case for the next several years. The other parties, including Kay Hamlin, would not hear of it. Several years into the interpleader action, Hamlin filed a brief arguing that First Trust, the disinterested stakeholder, should not be dismissed because "the parties [should] have a full opportunity to file additional claims against it," because the "defendants intend to ask . . . for an award of attorney fees and costs" against it, and because its "employees are important witnesses in th[e] case." JA 791. A party who chooses to take a litigation stance of this sort must take the bitter (escalating fees) with the sweet (the potential for an additional recovery).

Nor at any rate did the district court let First Trust off scot-free. The court penalized First Trust for having filed the action in the wrong venue and for having failed to include Kay Hamlin as a defendant. Hamlin requested and received expenses for having to intervene in the case, which were subtracted from First Trust's award. Most of the fees in this case, moreover, were incurred *after* the case was transferred to Kentucky and after Hamlin became a party. Although I might have reduced First Trust's fees even further had it been my call to make, I cannot say that the district court, which had a ringside view of the proceedings, abused its discretion.

The majority's treatment of Hamlin's attorney's fees similarly ignores our deferential standard of review by doing little more than addressing various arguments that the district court specifically considered and rejected below. *See Jordan v. Mich. Conf. of Teamsters Welfare Fund*, 207 F.3d 854, 860 (6th Cir. 2000) ("A district court has substantial discretion in making attorney fee awards in ERISA cases."). Neither has the majority provided any explanation why the district court was not correct to conclude that Hamlin had waived her right to more than $1,000 in fees.

The majority, lastly, criticizes the district court for approving an award to First Trust that comes from the estate (e.g., from Kay Hamlin) rather than from the plan. But that, again, was Kay Hamlin's fault, not the district court's. She did not make this argument below and she makes the argument on appeal in a single paragraph without citation to any legal authority. The argument has been waived below and here, *see, e.g.*, *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 657 (6th Cir. 1996), a conclusion that seems particularly appropriate given the ample opportunities that Ms. Hamlin had to raise this argument in the many briefs she filed over attorney fees (and other satellite disputes) in this case.

I would affirm the district court's award of attorney fees to both Hamlin and the bank.