NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0262n.06

Nos. 12-2092/2140

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| CLAIRE J. KAY, an individual and CLAYMORE CONSTRUCTION CO., a Michigan Corporation | ) ) ) | **FILED** Apr 07, 2014 DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellees/Cross-Appellants, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| UNITED OF OMAHA LIFE INSURANCE COMPANY, a Nebraska Corporation, | ) ) ) | COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| Defendant-Appellant/Cross-Appellee. | ) ) | |

Before: COOK, GRIFFIN, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Sherman Kay died before he paid his last life insurance premium. His insurer, United of Omaha, denied death benefits to his wife, Claire Kay, and the company he owned, Claymore Construction. Claire and Claymore sued United for breach of contract and won at trial. United now challenges numerous decisions of the district court. We vacate and remand for a new trial.

I.

In 2001, Sherman Kay bought a $2 million life-insurance policy from United. At the time of his death, the plaintiffs—Claire Kay and Claymore Construction (collectively, "Kay")— were the policy's joint owners and beneficiaries.

The policy's premium was due by the 12th day of each month. If Kay failed to pay by that date, the policy remained in force during a 31-day grace period. If Kay did not pay by the

end of the grace period, the policy would terminate. In that event, the policy's terms required Kay to do three things to reinstate it: first, submit a written application signed by the owner and the insured; second, submit evidence of insurability satisfactory to United; and third, pay any past-due premiums with interest.

In practice, however, United also allowed Kay to reinstate the policy another way—through a so-called "special offer" that was not part of the policy's terms. Specifically, once the grace period expired, United would send Kay a notice in which it offered to reinstate the policy if Kay simply paid the outstanding premium by the date stated in the notice, so long as the payment was made "during the lifetime of all persons insured under the policy." Kay—who routinely paid premiums late—reinstated the policy in this manner at least seven times.

United sent all premium notices to Claymore's office, but Claymore ceased operations by July 2008. Consequently, Claire directed United to send future premium notices to her home. United complied. Claire thereafter signed the checks for the next four premium payments. Sherman Kay's lawyer signed the check for the fifth premium, which was for November 2008.

United did not receive the November 2008 premium until December 18th—36 days past due. The following day, United sent Kay the December premium notice. United then sent a second notice on December 26th. The policy's grace period for the December premium expired on January 12th. The next day, United mailed a third notice, which included the usual "special offer" for reinstatement.

Eleven days later, on January 23rd, Sherman Kay died. Kay had not paid the December premium by then. Six days later, Claire mailed checks for the December and January premiums, but United returned the payment. In February, Claire filed a claim for death benefits under the policy; United denied the claim by written notice in March.

Kay thereafter sued United for breach of contract, negligence, and declaratory judgment. After discovery, United moved for summary judgment, arguing that Sherman Kay's policy terminated by its terms. The district court denied the motion, holding that, under Michigan law, a jury could find that United's previous acceptance of Kay's late payments equitably estopped United from terminating the policy. Kay also moved for summary judgment, which the court denied.

Before trial, United moved in limine to bar Kay from admitting as evidence certain excerpts from the deposition of Dena Austin, United's customer service representative. The district court denied United's motion. During the trial, United again objected and further noted that Kay's counsel had given the transcript excerpts (which United now argues were unfair and misleading) to United's counsel only minutes before. In response, the court sensibly noted its preference for live testimony, but for some reason reversed course and allowed Kay to read deposition excerpts to the jury. Once Kay's counsel was done, trial adjourned for five days.

Almost a week later, when United was finally able to put Austin on the stand, Kay's counsel repeatedly insinuated during cross-examination that United had destroyed documents that detailed the so-called special-offer policy that was in effect at the time of Sherman's death. The court sustained United's second objection, but denied United's request for a curative instruction to the jury.

At the close of Kay's case-in-chief, United began to argue orally for judgment as a matter of law, but the court cut United's counsel short and denied the motion without explanation. Later, United objected to the court's jury instructions because they failed to state that, under Michigan law, the jury should presume that Kay received the premium notices mailed by United. The court overruled the objection and submitted only Kay's contract claim to the jury.

The jury returned a verdict for Kay. United did not renew its motion for judgment as a matter of law or move for a new trial. Thereafter, over United's objections, the court awarded over $350,000 in costs and attorney fees to Kay, although the court stated no statutory or other legal basis for doing so.

United now appeals the district court's denial of its motions for summary judgment and judgment as a matter of law, two of the district court's evidentiary rulings, its denial of United's proposed jury instructions, and the district court's fee-award and calculation of interest. Kay cross-appeals the denial of her motion for summary judgment and the court's failure sua sponte to render judgment in Kay's favor on Kay's declaratory-judgment claim.

## II.

### A.

United appeals the district court's denials of its motion for summary judgment and its Rule 50(a) motion for judgment as a matter of law. We consider the summary judgment motion first. United's argument is straightforward: Sherman Kay's policy had obviously expired by its terms, on grounds of nonpayment, at the time of his death. Kay does not even dispute the point, but argues that United was equitably estopped from treating the policy as terminated. As defined in Michigan, the doctrine of equitable estoppel requires Kay to establish that United's representations induced her to believe that the policy was in effect at the time Sherman died, and that she reasonably relied on those representations. *See Morales v. Auto-Owners Ins. Co.*, 582 N.W.2d 776, 780 (Mich. 1998). And Kay says that United is equitably estopped from rejecting her final special-offer payment in January 2009 because it had accepted at least seven other special-offer payments from Kay before then. But United's response to that assertion is just as straightforward as its reading of the contract itself: every one of United's special-offer notices to

Kay expressly stated that United would reinstate the policy only if it received payment "during the lifetime" of the insured; and thus Kay could not reasonably think that she could reinstate the policy by sending United a check almost a week after Sherman Kay had died.

Much less straightforward, however, is whether we have jurisdiction to consider this argument in this appeal. In *Ortiz v. Jordan*, the Supreme Court held that we lack jurisdiction to review a district court's earlier denial of a motion for summary judgment after a jury trial. 131 S. Ct. 884, 891 (2011). United argues that we do have jurisdiction to review an order denying summary judgment if the motion raised a "pure question of law." *See In re AmTrust Fin. Corp.*, 694 F.3d 741, 751 (6th Cir. 2012). And United contends "[w]hether there are sufficient facts to create an issue regarding the applicability of equitable estoppel is a question of law." *N. Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1281 (6th Cir. 1997). Thus, United contends, we can answer that question here.

United conflates the term "purely legal issues" as used in *Ortiz* with the term "question of law" as used in *Myers*. Purely legal questions "involve disputes about the substance and clarity of pre-existing laws." *Ortiz*, 131 S. Ct. at 892. In other words they are abstract legal questions, which can be asked and answered without reference to the facts of the case. For example, whether the doctrine of equitable estoppel in a particular state requires reasonable reliance, as opposed merely to actual reliance, might be such a question. But a "legal question" in the usual summary-judgment sense is something quite different. That sort of question asks whether a particular factual record does or does not present a genuine issue of material fact. The question here is of the more pedestrian latter sort: whether on this record a jury could find that Kay reasonably thought she could mail in her premium check after Sherman Kay's death and reinstate

his life insurance policy. That question is hardly "purely legal" in the *Ortiz* sense of the term, and thus we cannot review the district court's denial of United's summary-judgment motion.

The same is true of the district court's denial of United's Rule 50(a) motion. That motion presented the same factbound question that United's Rule 56 motion did, except that the Rule 50(a) motion was based on the evidence (or lack thereof) that Kay presented at trial. But we are "powerless" to review a factbound Rule 50(a) motion unless the party also presents a post-trial motion under Rule 50(b). *See Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc*, 546 U.S. 394, 405 (2006). United did not present a Rule 50(b) motion here, so we cannot review the district court's denial of its factbound motion under Rule 50(a).

## B.

United also argues that the district court committed reversible error with respect to its jury instructions. We review jury instructions for an abuse of discretion. *United States v. Adams,* 583 F.3d 457, 468–69 (6th Cir. 2009).

By way of background, Kay contended at trial that Sherman Kay's policy was still in effect at the time of his death because, according to Kay, United had not complied with a Michigan statute that requires insurers to send "written notice . . . to the policyowner's last known address at least 30 days prior to termination of coverage." Mich. Comp. Laws Ann. § 500.4012(b). A predicate of that theory was that Kay had not actually received the notice of termination that United had mailed to Kay on December 18th. Under Michigan law, however, a mailed letter is presumed delivered and received. *Goodyear Tire & Rubber Co. v. City of Roseville*, 468 Mich. 947 (Mich. 2003). Accordingly, United asked the district court to instruct the jury that Kay was presumed to receive the December premium notices that United had

mailed to her. That instruction was a correct statement of Michigan law, *see id.*; but the court rejected United's proposed instruction for the following reasons:

> I have concluded, as a matter of law, that this case . . . should not go off on facts which relate to whether notices were received or not received or mailed or not mailed. It's more of a body of intent of the contract of insurance, the policy and whether the whole thing together amounted to carrying out the obligations or not.

We can only conclude that the omission of United's proposed instruction was an abuse of discretion. Throughout the trial, Kay repeatedly contended that Sherman and Claire Kay had never received the December premium notices. Claire twice testified that she had not received the notices. Moreover, during his closing argument, Kay's counsel said four times that Kay had not received the notices. Indeed, Kay's counsel ended his closing-argument rebuttal by telling the jury that an examination of Dr. Kay's mail purportedly showed that the December notices were never received by Kay. The Jury was thus left without a proper instruction regarding a factual issue that Claire herself made a centerpiece of the case.

The jury's confusion was likely compounded by the court's failure to give the jury any instruction at all concerning Kay's theory under M.C.L. § 500.4012 (b) or the equitable estoppel theory that was the basis for the district court's denial of United's motion for summary judgment. Instead, the court simply instructed the jury that Kay bore the burden of proving that United breached its contract with Kay. On this record, the district court's failure to give United's proposed instruction impaired United's theory of the case. *See Adams*, 583 F.3d at 468-69. United is therefore entitled to a new trial. *See id.*

C.

We address three additional matters for the purposes of remand. First, United argues that the district court erred when, without citing any authority, it awarded over $337,000 in attorney fees to Kay. Under the American rule, each party normally bears its own attorney fees. *Griffin*

*Indus., Inc. v. U.S. E.P.A.*, 640 F.3d 682, 685 (6th Cir. 2011In order to award attorney fees, a district court must cite specific statutory authority, or a party's bad faith or willful disobedience of a court order. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975). If in the latter circumstances a court awards fees as a sanction, it must provide the party to be sanctioned with notice and an opportunity to be heard beforehand. *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767 (1980). We review a district court's award of attorney fees for an abuse of discretion. *Imwalle v. Reliance Med. Products*, Inc., 515 F.3d 531, 551 (6th Cir. 2008).

Here, the district court did not cite any statutory basis for the award of fees. Nor did the court characterize the fees as a sanction or give United any notice or opportunity to be heard regarding any potential sanction. (Nor do we see any basis for an award of fees as a sanction.) Instead, the court simply explained that "[a] substantial amount of legal work was incurred in this case, including a jury trial; and the court finds the award appropriate." That explanation does not distinguish this case from any other that goes to trial; and thus the court committed reversible error when it awarded fees to Kay.

Second, and more briefly, we agree with United that the district court abused its discretion when it allowed Kay's counsel to read to the jury selected excerpts from Dena Austin's deposition transcript notwithstanding that Austin was present in the courtroom and available to testify. *See* Fed. R. Civ. P. 32(a)(4); *see also Hartman v. United States*, 538 F.2d 1336, 1345 (8th Cir. 1976) (Rule 32(a)(4)(B)'s 100-mile exception is determined at the time the deposition is offered).

Finally, the district court erred when it applied the state rather than the federal rate of post-judgment interest. *See Estate of Riddle ex rel. Riddle v. S. Farm Bureau Life Ins. Co.*, 421 F.3d 400, 409 (6th Cir. 2005).

D.

Kay argues in her cross-appeal that the court should have granted her motion for summary judgment. We lack jurisdiction to review the denial of that motion, however, for the same reasons that we lack jurisdiction to review the denial of United's motion for summary judgment. *See Ortiz*, 131 S. Ct. at 891.

Second, Kay argues that the district court erred when it failed sua sponte to enter judgment on her declaratory-judgment claim. But Kay never mentioned her declaratory-judgment claim during trial or made any effort to present the claim to the jury or the district court. Kay therefore waived this claim. *See, e.g.*, *Smith v. Gulf Oil Co.*, 995 F.2d 638, 644 (6th Cir. 1993).

\* \* \*

The judgment of the district court is vacated, and the case remanded for further proceedings consistent with this opinion.