NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0520n.06

No. 16-1576

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sep 08, 2017
DEBORAH S. HUNT, Clerk

CLAIRE J. KAY, an individual, and CLAYMORE
CONSTRUCTION COMPANY, a Michigan
Corporation,

      Plaintiffs-Appellees,

v.

UNITED OF OMAHA LIFE INSURANCE
COMPANY, a Nebraska Corporation,

      Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

**BEFORE: MERRITT, KETHLEDGE, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Claire Kay ("Mrs. Kay") and Claymore Construction Company (Claymore, collectively, Plaintiffs) were the beneficiaries of a $2 million life-insurance policy that Claire's husband Dr. Sherman Kay purchased from United of Omaha Life Insurance Company (United) in 2001. After Dr. Kay died in January 2009, United denied coverage, asserting that the policy had lapsed because the December 2008 and January 2009 premiums had not been paid before Dr. Kay's death. Plaintiffs sued, alleging breach of contract. A jury found in Plaintiffs' favor, but this court reversed due to flawed jury instructions. After remand, a second jury again found in Plaintiffs' favor. United now argues that the district court erred by denying its post-remand request to submit a second summary judgment motion, by incorrectly instructing the jury, and by denying United's motions for post-trial relief. We **AFFIRM**.

## I. BACKGROUND[1]

### A. Facts

As this court previously explained:

> In 2001, Sherman Kay bought a $2 million life-insurance policy from United. At the time of his death, the plaintiffs . . . were the policy's joint owners and beneficiaries.
>
> The policy's premium was due by the 12th day of each month. If Kay failed to pay by that date, the policy remained in force during a 31-day grace period. If Kay did not pay by the end of the grace period, the policy would terminate. In that event, the policy's terms required Kay to do three things to reinstate it: first, submit a written application signed by the owner and the insured; second, submit evidence of insurability satisfactory to United; and third, pay any past-due premiums with interest.
>
> In practice, however, United also allowed Kay to reinstate the policy another way—through a so-called "special offer" that was not part of the policy's terms. Specifically, once the grace period expired, United would send Kay a notice in which it offered to reinstate the policy if Kay simply paid the outstanding premium by the date stated in the notice, so long as the payment was made "during the lifetime of all persons insured under the policy." Kay—who routinely paid premiums late—reinstated the policy in this manner at least seven times.

*Kay v. United of Omaha Life Ins. Co.* (*Kay I*), 562 F. App'x 380, 383 (6th Cir. 2014). Further, United did not send out premium notices on a regular schedule; rather, it only sent the notice that a given month's premium was due after it received the premium for the prior month. *See id.*

Dr. Kay apparently suffered a serious stroke in early 2008. In February, Mrs. Kay began paying the monthly life-insurance premiums. In May, she telephoned United, told a representative that she did not want the policy to terminate, requested a payment history, and asked United to contact her if any payments were late. Up to that point, United had been sending premium notices to Claymore at its corporate office. Claymore ceased operations in the summer

---

[1] This suit has been pending for more than eight years, with several rounds of dispositive motion briefing, two jury trials, and now two appeals to this court. We discuss only the facts and procedural history relevant to our disposition of this appeal.

of 2008. This caused some confusion, but eventually Mrs. Kay directed United to send premium notices to Dr. Kay at the family home, and it is undisputed that all premium payments through October 2008 were made. It is also undisputed that the November 2008 premium (due November 12) was not paid until December 11, almost a month late, but two days before the expiration of the policy's 31-day grace period.

The December 2008 premium was due on December 12. United's files contain three notices regarding the December premium, dated December 19, 2008, December 26, 2008, and January 13, 2009. Each is addressed to Dr. Kay at the Kay family home. On the back side of the December 19 notice is the following text: "Unless each premium billed on this Notice is paid on or before the due date or within the grace period, each policy on which the premium is not paid will lapse and all payments thereon will become forfeit [sic] except as otherwise stated in the contract." (Appellant's App. at 175.) The parties dispute whether these notices were actually sent, and whether Mrs. Kay received them.

Dr. Kay passed away on January 23, 2009. The parties agree that the December 2008 and January 2009 premiums were both unpaid and past-due at that point, and that United advised the Kays' independent insurance agent on January 26 that it would reject any claim for benefits. The parties disagree, though, on whether the policy was still in effect at that point. Believing it was, Mrs. Kay attempted to make the outstanding payments on January 30, but United returned her check. She filed a claim for benefits in February, but United denied it.

## B. Procedural History

Plaintiffs brought this action in state court in May 2009, and United removed it to federal court. As relevant here, Plaintiffs pleaded two distinct claims. First, Plaintiffs alleged that United committed a breach of contract by, among other things, refusing to accept late payments

when it had done so in the past (an equitable estoppel theory), failing to act in good faith, and failing to pay benefits upon Dr. Kay's death when the policy was still in effect because United had not terminated it in accordance with Michigan law.[2] Second, Plaintiffs sought a declaratory judgment that because United had not complied with the same Michigan law, the policy remained in effect when Dr. Kay died. Prior to the first trial, Plaintiffs agreed, in their pleadings and the joint pretrial order, that United had sent the notices regarding the December 2008 premium to Dr. Kay at the family home.

The case eventually proceeded to trial, and a jury found in Plaintiffs' favor on the breach-of-contract claim. Because the jury was not instructed on any of the specific theories of liability, and returned a general verdict for Plaintiffs on their breach-of-contract claim, we do not know which theory or theories of liability the jury accepted. The district court did not rule on Plaintiffs' declaratory judgment claim, and Plaintiffs did not ask the court to do so.

United appealed, arguing, as relevant here, that the district court should have granted its summary judgment motion or its Rule 50(a) motion, and had erred by not instructing the jury that Michigan law provides a rebuttable presumption that a mailed letter (e.g., the premium notice dated December 19, 2008) has been delivered and received. *Kay I*, 562 F. App'x at 384–86; *see Goodyear Tire & Rubber Co. v. City of Roseville*, 664 N.W.2d 751 (Mich. 2003). Plaintiffs cross-appealed, arguing that they were entitled to summary judgment on their breach-

---

[2] Michigan law applies in this diversity case. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–80 (1938). Under Michigan law, a life-insurance policy must provide "[t]hat written notice shall be sent by the insurer to the policyowner's last known address at least 30 days prior to termination of coverage." Mich. Comp. Laws Ann. § 500.4012(b); *Kay I*, 562 F. App'x at 385. The policy at issue here does not contain that provision, but the parties agree that it must be read into the policy. *See Rohlman v. Hawkeye-Sec. Ins. Co.*, 502 N.W.2d 310, 313 n.3 (1993). Thus, United does not dispute that the policy remained in effect until 30 days after notice of termination was given. It asserts, however, that the language regarding lapse and forfeiture in the December 19, 2008 premium notice satisfies the requirements of § 500.4012(b).

of-contract claim because United had not sent the termination notice required by Michigan law, and that the district court should have decided their declaratory-judgment claim in their favor for the same reason.

In April 2014, this court held that it was without jurisdiction to consider either side's request for judgment as a matter of law, because neither party renewed its request after trial. *Kay I*, 562 F. App'x at 384, 387 (citing *Ortiz v. Jordan*, 562 U.S. 180 (2011)). The court also found that Plaintiffs had waived their declaratory-judgment claim because they failed to raise it at or after trial. *Id.* at 387. The court found merit, however, in United's jury-instruction argument, and remanded for a new trial on that basis. *Id.* at 385 (citing *Goodyear Tire*, 664 N.W.2d 751). The court explained that the failure to give an instruction on the *Goodyear Tire* presumption likely confused the jury, in part, because of Plaintiffs' theory that United had breached its contractual obligation—imposed by Mich. Comp. Laws Ann. § 500.4012(b)—to provide 30 days' notice prior to the termination of the policy. *See id.* at 385–86. Despite concluding it lacked jurisdiction to entertain the parties' claims for judgment as a matter of law, the court suggested that United would have been entitled to judgment on Plaintiffs' equitable estoppel theory, had it properly preserved the argument. *Id.* at 384.

After remand, the case sat dormant for several months. At an August status conference, United apparently informed the district court's case manager that it wished to renew its summary judgment motion, but it is not clear whether United gave notice of the arguments it intended to make. Plaintiffs objected. On August 25, the district court issued a scheduling order that did not provide for renewed dispositive motions and that set the case for a trial in March 2015. (R. 153, PID 3368 (setting trial for 3/3/15); *see also* R. 158, PID 3653 (issued Jan. 5, 2015, postponing trial to 3/23/15 and still not providing for dispositive motions).) In December 2014, however,

United filed a motion seeking leave to submit a renewed motion for summary judgment, focusing largely on this court's dicta regarding Plaintiff's equitable estoppel theory. The district court rejected that request early in March 2015, concluding that: (1) allowing a renewed summary judgment motion would exceed the scope of this court's mandate; (2) the issues raised in United's proposed summary judgment motion were controlled by the law-of-the-case doctrine; (3) United had not identified any new facts or expanded the factual record; and (4) United had unreasonably delayed in making its request, and allowing a renewed summary judgment motion would delay the trial scheduled for later that month.

Prior to the second trial, United filed a one-page motion *in limine* "to preclude plaintiffs . . . from making any reference to or any other use of plaintiffs' declaratory-judgment claim where the Court of Appeals has held that plaintiffs waived this claim." (R. 164, PID 3675); *see Kay I*, 562 F. App'x at 387. On the first day of trial, the district court granted the motion in part, forbidding any "reference to a declaratory judgment by the Plaintiff[s] in any way in opening statements." (R. 215, PID 5181.) The district court did not address the possibility of references to the declaratory-judgment claim at other stages of the trial, or references to § 500.4012(b)'s termination-notice requirement more generally, especially as related to the breach-of-contract claim. United did not ask for clarification or a broader ruling.

For the second trial, Plaintiffs refused to stipulate that the notices regarding the December 2008 premium had been sent. At trial, Mrs. Kay testified about her efforts to keep the policy current, as discussed above. She also testified that she did not receive any notices regarding the December 2008 premium; nor did she ever receive a termination notice. Plaintiffs then presented testimony from the first trial from Morris Silverman, the independent insurance agent who had sold Dr. Kay the United policy. Silverman testified that, although United had typically

notified him if payments were late, he received no such notices in November or December 2008, or in January 2009. Nor did Silverman receive a termination notice during that time period.

Plaintiffs also presented deposition testimony from United employees Sheila Dean and Frank Thiesen. Dean acknowledged that the notices regarding the December 2008 premium were addressed to Dr. Kay, even though he was not the policyowner, and that no notice had been addressed to Mrs. Kay. Thiesen testified that the policy file did not include "any cancellation, lapse and/or termination notices . . . prior to February 6, 2009." (Appellant's App. at 383.)

United made an oral Rule 50(a) motion for judgment as a matter of law at the close of Plaintiffs' case-in-chief, and submitted a written motion explaining its position after the district court declined to hear oral arguments. United focused exclusively on estoppel, arguing that in light of this court's dicta in *Kay I*, that theory of liability failed. In support of that argument, United asserted that Plaintiffs must have received the notices regarding the December 2008 premium—which stated that the "special offer" to reinstate a lapsed policy was only available during the life of the insured—because Plaintiffs alleged in their second amended complaint that United had mailed the notices, and items mailed are presumed received. The district court denied United's motion.

United began its case by presenting deposition testimony from Patricia Amburn of Flagstar Bank. Claymore had assigned its share of the policy proceeds to Flagstar as security for various loans. For that reason, Flagstar was receiving copies of premium notices, and Amburn testified that Flagstar did receive notices regarding the December 2008 premium. Stanley Bershead, Dr. Kay's attorney, testified that Amburn forwarded a copy of one of those notices to him. He did not, however, discuss the matter with Mrs. Kay. Dena Austin, another United employee, testified that, in cases such as this, where a policy has multiple owners, United's

practice is that "[w]hoever is listed on our system as just being the first owner, that's where the policy or the premium notices will go to." (R. 213, PID 5073.) Austin further testified that the notices related to the December 2008 premium were sent, and were addressed to Dr. Kay at the family home because Mrs. Kay had instructed United to use that address. On cross-examination, Amburn acknowledged that, under Michigan law, life-insurance companies are required to send written termination notices to policyowners, and that, during the period at issue, Dr. Kay was not the policyowner, and had no rights under the policy. Finally, United successfully placed in evidence Plaintiffs' first and second amended complaints, in which Plaintiffs alleged that the notices regarding the December 2008 premium had been sent to Dr. Kay at the family home. At the close of United's case, it orally renewed its Rule 50(a) motion. United did not assert any new basis for judgment as a matter of law, either orally or in writing. The district court denied the motion.

In their closing argument, Plaintiffs initially focused on the requirement that 30 days' notice be given before a life-insurance policy is terminated, and argued that United had not actually sent any notices regarding the December 2008 premium, or if they were sent, it was to Dr. Kay, not the policyowners. United objected, arguing that this was an attempt to resurrect the waived declaratory-judgment claim, in violation of the district court's previous order. Plaintiffs responded that the issue was also part of their breach-of-contract claim. The district court stated that it would address the matter outside the hearing of the jury and issue a curative instruction, if necessary. Plaintiffs then also argued that United was estopped from denying coverage and had waived the right to do so, and that United had sought to ensure the policy would lapse by withholding notice of past-due premiums. As relevant here, United argued that the notices

regarding the December 2008 premium had been sent, and to the address Mrs. Kay requested be used.

The case was then submitted to the jury. Over United's objection, no curative instruction regarding Plaintiffs' reference to the termination-notice requirement was given. The jury was instructed on the rebuttable presumption that a mailed communication is received. As with the first trial, the jury was instructed only on the basic elements of a breach-of-contract claim, not on specific theories of liability. And, as with the first trial, the jury returned a general verdict in favor of Plaintiffs on their breach-of-contract claim. In April 2015, the district court entered judgment in the policy amount of $2,000,000, plus interest and costs.

In May 2015, United filed a renewed motion for judgment as a matter of law pursuant to Rule 50(b), or, alternatively for a new trial pursuant to Rule 59. United focused primarily on the estoppel issue, arguing that in light of this court's dicta in *Kay I*, that theory of liability failed. United also asserted that Plaintiffs were bound by the allegation in their pleadings that United had mailed the notices regarding the December 2008 premiums to Dr. Kay at the family home. Thus, according to United, because a mailed letter is presumed received, reasonable minds could only conclude that Plaintiffs received all the premium notices. United did not link this point to any particular theory of liability, however. Finally, United asserted that Plaintiffs "offered absolutely nothing" to support their theory that United had breached the contract by failing to provide the termination notice required by Michigan law. (R. 198, PID 4649–50.) The district court denied both United's request for judgment as a matter of law and its request for a new trial, concluding that "reasonable minds can differ on the questions of material fact that were presented to the jury." (R. 206, PID 4922.)

## II.  DISCUSSION

United makes three arguments on appeal:  (1) the district court should have allowed it to file a second summary judgment motion after remand; (2) it was entitled to judgment as a matter of law under Rule 50, or to a new trial under Rule 59; and (3) a curative instruction should have been given to the jury after Plaintiffs' closing argument.

### A.  Second Summary Judgment Motion

United contends that the district court erred by denying its post-remand request to file a second summary judgment motion.  The district court concluded that:  (1) our mandate limited remand proceedings to a new trial; (2) the law-of-the-case doctrine applied; (3) United failed to identify any new material facts; and (4) allowing another round of dispositive motion briefing would unreasonably delay the second trial.

We will assume that the remand was general and that the district court erred in ruling otherwise.  Nevertheless, it was within the district court's discretion to deny United leave to file its summary judgment motion.  *See Kovacevich v. Kent State Univ.*, 224 F.3d 806, 835 (6th Cir. 2000).  The case returned to the district court in May 2014, and a status conference was held in August.  United reportedly expressed its intent to seek permission to file a second summary judgment motion during that conference, (*see* R. 156, PID 3552), but it did not object when the district court issued a scheduling order that did not provide for dispositive motions, (*see* R. 153, PID 3368).  Instead, United waited until December 5 to submit its Motion for Leave to File Renewed Motion for Summary Judgment (the Motion for Leave), and the rest of that month was taken up with briefing that motion.  The district court denied the Motion for Leave on March 3, 2015, less than three weeks prior to the scheduled start of trial.

A district court has wide discretion to manage its docket and "insur[e] an expeditious processing of the litigation." *Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986). The obvious time for United to have sought permission to file a motion for summary judgment was, if at all, shortly, if not immediately, after remand. But United waited three months to even raise the prospect of a renewed summary judgment motion and another four months to actually request leave to file one. United asserts that there would have been plenty of time to resolve a summary judgment motion before trial if only the district court had granted the Motion for Leave on December 5, 2014, the same day it was filed. But it is unreasonable to suggest that a busy federal district court should have ruled on a motion the same day it was filed. Further, the district court quite properly allowed Plaintiffs to respond to United's motion. And United did not request an accelerated briefing schedule or expedited consideration of its motion; instead, it delayed the matter further by filing an optional reply to Plaintiffs' response on the last possible day to do so. United was of course entitled to take its time. But it cannot now blame *the court* for not acting quickly enough.[3] And summary judgment motions are typically resolved in months, not weeks. Allowing another round of summary judgment briefing would almost certainly have required delaying the trial. Under the circumstances, we cannot say that the district court's finding of undue delay was an abuse of discretion.

---

[3] United also asserts that Plaintiffs seek to "play upon the Court's sympathies as to Claire Kay's 'dire' financial straits, and how she is in desperate need of the life insurance proceeds to support her and her special needs son[,]" while "fail[ing] to apprise the Court that, despite Claire Kay's alleged dire financial straits, Plaintiffs did nothing from the time this Court's opinion issued" until the August 2014 status conference. (Reply Br. at 25.) Thus, says United, "if 'delay' is to be found, Plaintiffs – as the party filing this lawsuit – are the responsible party." (*Id.*) This argument is meritless. Whether or not it would have been in Mrs. Kay's interest to expedite the proceedings, United—and only United—bears responsibility for not raising its renewed summary judgment motion sooner.

Having concluded that the district court did not abuse its discretion in denying United's motion because it would have unduly delayed the trial, we need not address the other bases for the district court's ruling.

## B. Request for Judgment as a Matter of Law or a New Trial

The heart of United's appeal is its argument that it was entitled to judgment as a matter of law pursuant to Rule 50(b), or to a new trial pursuant to Rule 59, because the verdict was not supported by the evidence presented at trial. United's post-trial motion focused primarily on Plaintiffs' equitable estoppel theory of liability. United also asserted that Plaintiffs "offered absolutely nothing" to support their theory that United had breached the contract by failing to provide the termination notice required by Michigan law.

We review the district court's denial of judgment as a matter of law de novo. *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 405 (6th Cir. 2006). In this diversity case, we apply Michigan's "substantive standard for determining when judgment as a matter of law is appropriate." *Id.* (citation omitted). Thus, "judgment as a matter of law is appropriate when 'viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party.'" *Id.* (citation omitted). We review the decision to deny a Rule 59 motion for a new trial for abuse of discretion. *Id.* As relevant here, "[w]e have interpreted [Rule 59] to require a new trial only when a jury has reached a seriously erroneous result as evidenced by . . . the verdict being against the weight of the evidence[.]" *Id.* (citation, quotation marks, and brackets omitted).

As it did below, United argues at length that Plaintiffs' equitable estoppel theory was not supported by the evidence. We need not address that issue, however. There were multiple

theories of liability on Plaintiffs' breach-of-contract claim. In particular, United has consistently admitted that it had an implied *contractual* obligation to provide 30 days' notice before terminating the policy, as required by § 500.4012(b). *See* discussion *supra* note 2. And Plaintiffs have maintained throughout this litigation that United breached that contractual obligation. United's Rule 50(a) motion did not address this theory, and therefore United was not entitled to judgment as a matter of law even if it is correct as to estoppel.

United's renewed motion pursuant to Rule 50(b) did address Plaintiffs' § 500.4012(b) theory, but that was too late. A Rule 50(b) motion "is only a renewal of the preverdict motion," and "it can be granted only on grounds advanced in the preverdict motion." *Ford v. Cty. of Grand Traverse*, 535 F.3d 483, 491 (6th Cir. 2008) (quoting Fed. R. Civ. P. 50(b) advisory committee's note to 2006 amendment). This requirement protects "the plaintiff's Seventh Amendment right to a jury trial" by "requiring that parties raise important issues *before* the case is submitted to the jury." *Id.* at 492 (emphasis in original) (quoting *Am. & Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 160 (6th Cir. 1997)). Courts "usually take a liberal view of what constitutes a pre-verdict motion sufficient to support a post-verdict motion," but the Rule 50(a) motion must have "provid[ed] notice to the court and opposing counsel of any deficiencies in the opposing party's case" raised in the Rule 50(b) motion. *Id.* at 492-93 (quoting *Kusens v. Pascal Co.*, 448 F.3d 349, 361 (6th Cir. 2006)).

United cannot satisfy even this liberal standard. In *Ford*, this court held that a defendant may not base a Rule 50(b) motion on a legal theory not previously raised in a Rule 50(a) motion. 535 F.3d at 491–94.[4] Similarly, United may not attack in a Rule 50(b) motion a theory of

---

[4] In *Ford*, an Eighth Amendment deliberate-indifference case, the jury found for all of the individual defendants, but against the county. 535 F.3d at 488. The county's Rule 50(b) motion

liability it did not previously address in a Rule 50(a) motion. United's Rule 50(a) motion contains no mention of § 500.4012(b) or United's obligation to provide advance notice of termination to the policyowners, much less any discussion of that aspect of Plaintiffs' breach-of-contract claim that would have put the court or the Plaintiffs on notice that United was challenging the termination-notice-based theory of liability. (*See* R. 179, PID 4135–49.) Indeed, United's 50(b) motion does not even attempt to argue that the termination-notice issue had been raised previously. (*See* R. 198, PID 4636–37.)

United attempts to explain its failure to comply with the requirements of Rule 50 by stating that it "was under the impression that Plaintiff[s'] theory of breach relating to the Michigan statute was no longer an issue in the case." (Appellant's Br. at 49.) True, this court held that Plaintiffs waived the *declaratory-judgment* claim based on § 500.4012(b), *Kay I*, F. App'x at 387, and the district court barred Plaintiffs from making "reference to a *declaratory judgment . . .* in any way in opening statements," (R. 215, PID 5181 (emphasis added)). But neither this court nor the district court has ever held that Plaintiffs could not continue to pursue their § 500.4012(b) theory as part of their *breach-of-contract* claim. Indeed, Plaintiffs referenced § 500.4012(b) during their opening statement in the context of their breach-of-contract claim and repeatedly questioned witnesses and presented deposition testimony about whether Plaintiffs, as policyowners, received a termination notice, generally without objection from United, and all prior to United's Rule 50(a) motion.[5] (*See, e.g.*, R. 210, PID 4938 (opening statement); *id.* at

---

argued, for the first time, that it could not be held liable if none of the individual defendants had committed a constitutional violation.

[5] United did object once, when Plaintiffs questioned Amburn about the requirements of Michigan law. The district court overruled the objection and allowed Amburn to answer. United has not challenged that decision on appeal. Further, that United made this objection indicates that it was aware of Plaintiffs' § 500.4012(b) theory, and therefore could and should have addressed it in their Rule 50(a) motion.

4951–52, 4968, 4971–73 (Claire Kay Test.); Appellant's App. at 282 (Silverman Test.); *id.* at 367–68 (Dean Test.); *id.* at 383 (Thiesen Test.).)

For those reasons, United waived the argument that it is entitled to judgment because, as a matter of law, it complied with § 500.4012(b)'s notice requirement. *Ford*, 535 F.3d at 494. Once again, United must live with its failure to properly raise and preserve its legal arguments throughout this litigation. *See Kay I*, 562 F. App'x at 384–85.

Further, United's argument that it is entitled to judgment on the merits fails. Section500.4012(b) requires that notice be sent to the policyowners "at least 30 days prior to termination of coverage." United contends that the notice dated December 19, 2008—with its language warning that coverage will lapse and previous payments will be forfeited if the overdue December premium is not paid within the grace period—satisfies that requirement. But the jury could have reasonably concluded that United did not actually send the December 19 notice. True, United's employees testified that they did so, and there is a presumption that mailed letters are delivered and received. *Kay I*, 562 F. App'x at 385 (citing *Goodyear Tire*, 664 N.W.2d 751). But "this presumption can be rebutted with evidence that the letter was not received." *Goodyear Tire*, 664 N.W.2d 751 (citing *Barstow v. Fed. Life Ins. Co.*, 242 N.W. 862, 863 (Mich. 1932)). Here, Mrs. Kay testified that she never received the December 19 notice, or the other notices regarding the December 2008 premium United claims it sent around the same time. To be sure, this testimony was self-serving, but it was supported by Silverman's testimony. Silverman testified that it was United's practice to notify him if the Kays' premiums were overdue, that he had received notices regarding overdue premiums in the past, and that upon receipt of a notice from United, he would call the Kays to tell them that "[i]t's imperative that [they] pay [their] premium to keep [their] policy in force[.]" (Appellant's App. at 278.) He did not, however,

receive any such notices in November or December 2008, or January 2009. (*Id*. at 282.) The jury was entitled to credit this testimony and conclude that the December 19 notice was not received because United did not actually send it.[6] Further, the statute requires notice to the policyowners, and Mrs. Kay and Claymore were both policyowners. Austin, a United employee, testified that United's practice was to send only one premium notice, even when a policy had multiple owners. The December 19 notice at issue was addressed to Dr. Kay, not Mrs. Kay or Claymore. Dr. Kay was the majority owner of Claymore, but it would not have been unreasonable for the jury to conclude that United breached the contract by failing to send a notice to Mrs. Kay.

Because a reasonable jury could have found that United breached its implied contractual obligation to send notice of termination to the policyowners at least 30 days before terminating the policy, the verdict was not against the weight of the evidence, and the district court did not abuse its discretion in declining to grant a new trial. *See Mike's Train House*, 472 F.3d at 405.

---

[6] Plaintiffs did allege in their second amended complaint that the December 19 notice had been sent to Dr. Kay at the family home, and "[f]actual assertions in pleadings" are generally "binding on the party who made them," *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000) (quoting *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)), including on appeal, *Ferguson v. Neighborhood Hous. Servs. of Cleveland, Inc.*, 780 F.2d 549, 551 (6th Cir. 1986). But in its Rule 50(b) motion, United cited Plaintiffs' judicial admissions only in defense of the estoppel theory of liability; it did not link them to Plaintiffs' § 500.4012(b) theory. (*See* R. 198, PID 4646–50.) The same is true in both United's principal and reply briefs on appeal. (*See* Appellant's Br. at 41–48; Reply Br. at 4–16.) Again, we will not consider arguments United did not properly present below. Further, at trial, United did not seek to enforce Plaintiffs' judicial admissions by requesting that the district court instruct the jury that they must accept that the December 19 notice was sent. Instead, United introduced Plaintiffs' pleadings as *evidence*, and argued the issue to the jury. A district court has the discretionary authority to reopen the subject matter of a judicial admission. *Ferguson*, 780 F.2d at 551. In light of United's trial strategy, the district court's decision to deny United's Rule 50(b) motion on the basis that factual disputes existed can be understood as a determination that Plaintiffs should be relieved from their judicial admissions, because even United considered the question whether the December 19 notice was sent to be a disputed factual question.

## C. Curative Instruction

United's final argument is that the district court erred by not issuing a curative instruction after Plaintiffs raised the issue of termination letters in their closing argument. (Appellant's Br. at 52.) Specifically, United sought to have the jury instructed that "[a]ny issue with respect to a failure to send a termination letter is not an issue in this case." (R. 213, PID 5165.) We review the refusal to issue a curative instruction only for abuse of discretion. *See Cummins v. BIC USA, Inc.*, 727 F.3d 506, 516 (6th Cir. 2013). United's argument is based on its understanding that "[t]he trial court had previously ruled, based on this Court's opinion in *Kay I*, that Plaintiffs' request for [a] declaratory judgment that United allegedly violated Michigan statutory law [by] not sending a so-called 'termination letter' had been waived and that there should be no mention of it." (Appellant's Br. at 52.) But, as explained above, that understanding was wrong. The district court did not order that "there should be no mention" of the termination-notice issue. (*See id.*) Rather, the district court "forbid reference to a declaratory judgment by the Plaintiff in any way in opening statements." (R. 215, PID 5181.) Neither this court nor the district court held that Plaintiffs could not pursue their *breach-of-contract claim* based on the implied contractual obligation to provide termination notice in accordance with § 500.4012(b), and there was unobjected-to testimony on the issue. In light of the limited scope of both this court's prior ruling and the relevant order from the district court, Plaintiffs' reference to the termination-notice requirement during closing arguments did not unfairly prejudice United, and the district court did not abuse its discretion in refusing to give the requested instruction.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.