NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0478n.06

Case No. 18-1153

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sep 21, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED OF OMAHA LIFE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| CLAIRE J. KAY; CLAYMORE CONSTRUCTION CO., | ) ) ) | |
| Defendants-Appellants, | ) ) | |
| BANK OF AMERICA, | ) ) | |
| Defendant-Appellee. | ) | |

BEFORE: SUTTON, McKEAGUE and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. Although Dr. Kay died, his life insurance policy lives on. But his insurer does not know who to pay. Bank of America claims it is entitled to the life insurance proceeds. But Dr. Kay's widow, Claire ("Mrs. Kay"),[1] says two statutes of limitations bar the Bank's claim. Since the district court considered only one of these statutes, we affirm in part and remand in part for proceedings consistent with this opinion.

---

[1] Consistent with a prior panel of this court, we refer to Claire Kay as Mrs. Kay. *See generally Kay v. United of Omaha Life Ins. Co.*, 709 F. App'x 320 (6th Cir. 2017).

I.

When the Kays needed money for their business, they borrowed it from Bank of America. As collateral, the Kays put up Dr. Kay's life insurance policy. To this end, the Kays drafted a separate contract with the Bank called the "Collateral Assignment"—saying that if the Kays did not pay back the loan, then the Bank could use the life insurance policy to recoup its money. And when the Kays defaulted on their loan, the Bank sued and obtained a judgment against the Kays in state court. But even with a state court judgment, the Kays did not pay—leading the Bank back to state court.

While the Bank and the Kays fought in court, Dr. Kay passed away. But his insurer, United of Omaha, refused to pay Mrs. Kay the life insurance proceeds because of an alleged policy lapse. So Mrs. Kay sued Omaha in federal court. While her federal lawsuit against Omaha was pending, the Bank and Mrs. Kay settled their separate dispute. Mrs. Kay agreed to pay the Bank some of what the Kays owed, and the Bank agreed to "forbear on further collection activity" until Mrs. Kay's lawsuit against Omaha was "resolved." R. 23-5, Pg. ID 453–54.

Almost a decade later, Mrs. Kay won her lawsuit against Omaha. *Kay*, 709 F. App'x at 321. Naturally, she expected Omaha to pay her. But the Bank thought it should be paid instead. Not knowing whether to pay Mrs. Kay or the Bank, Omaha initiated this interpleader suit—a suit used to "resolve conflicting claims to money or property." *First Trust Corp. v. Bryant*, 410 F.3d 842, 852 n.6 (6th Cir. 2005) (internal quotation marks omitted). The district court granted summary judgment to the Bank and awarded the Bank the life insurance proceeds. Mrs. Kay appeals.

II.

Mrs. Kay argues that two Michigan statutes of limitations bar the Bank from collecting the life insurance proceeds. We review both arguments de novo. *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710, 715 (6th Cir. 2018).

*Debt statute of limitations (Mich. Comp. Laws § 600.5809).* Mrs. Kay contends the Bank cannot collect the life insurance proceeds because its claim is outside the relevant ten-year statute of limitations for debt judgments. Mich. Comp. Laws § 600.5809(1), (3). When a party like the Bank obtains a judgment on a debt, the statute-of-limitations clock starts running the day the state court judgment is entered. *Id.* Since the Bank received a state court judgment on the Kays' debt (i.e., the business loan) more than ten years ago, Mrs. Kay says the Bank cannot collect the life insurance as payment for the debt.

The problem for Mrs. Kay, however, is that the Bank is not trying to enforce the state court judgment, so the debt statute of limitations does not apply. Instead, the Bank is attempting to enforce its rights through the separate Collateral Assignment agreement. And by its terms, the debt statute of limitations only applies to "noncontractual money obligation[s]." Mich. Comp. Laws § 600.5809(1).

Mrs. Kay admits as much in her brief by conceding that the Collateral Assignment creates a separate *contractual* right. Appellant Br. 23; *see also* 17 *Williston on Contracts* § 49:119 (4th ed.) (stating that generally "[a]n agreement assigning an insurance policy is . . . treated as an ordinary contract"). But, she argues, the language of the Collateral Assignment implicitly incorporates the debt statute of limitations. Her argument goes like this. The Collateral Assignment contract states that the "[p]olicy is to be held as collateral security for any and all liabilities . . . either now existing or that may hereafter arise . . . ." R. 1-1, Pg. ID 27. So, by Mrs.

- 3 -

Kay's lights, the life insurance proceeds can only be used to pay off "liabilities." And, according to Mrs. Kay, "liabilities" are only those debts that are legally enforceable. Assuming the Bank cannot legally enforce the Kays' debt because of the debt statute of limitations, Mrs. Kay argues that the Kays' debt is no longer a "liabilit[y]" that the Bank can use the life insurance to pay off. Therefore, she says the Bank has no rights to the proceeds under the Collateral Assignment contract.

Mrs. Kay is wrong for two reasons. First, even if the statute of limitations makes her debt legally unenforceable, it does not cancel the debt as a liability. A statute of limitations is a rule of procedure. Rules of procedure change only the procedures or remedies that a party can seek, not the party's underlying substantive rights. *Rushua v. Dep't of Corr.*, 859 N.W.2d 735, 742 (Mich. 2014). So here, the debt statute of limitations changes whether the Bank can legally enforce the Kays' debt in court (procedure), but it does not extinguish the debt (substantive right). Indeed, under Michigan Law, "[t]he running of the statute of limitations does not cancel [a] debt, it merely prevents a creditor from enforcing [their] claim" in court. *De Vries v. Alger*, 44 N.W.2d 872, 876 (Mich. 1950); *accord Midland Funding LLC v. Johnson*, 137 S. Ct. 1407, 1411–12 (2017) (collecting states, including Michigan, where the "creditor has the right to payment of a debt even after the [statute of] limitations period has expired"); *Buchanan v. Northland Grp., LLC*, 776 F.3d 393, 396–97 (6th Cir. 2015). So the Kays' debt to the Bank remains a liability.

Mrs. Kay claims that legal enforceability is all that matters. Since the debt is not legally enforceable, she claims it is no longer a "liabilit[y]" under the Collateral Assignment contract. Instead, she says the term "liabilities" in that agreement refers to only *legally enforceable* debts, not any debts at all. Thus, she claims the Bank cannot use the Collateral Assignment to collect the life insurance proceeds. Yet while Mrs. Kay points to Black's Law Dictionary for support, her

selective definition of "liabilities" is unavailing. Mrs. Kay says liability means only "[t]he quality, state, or condition of being *legally obligated* or accountable." *Black's Law Dictionary* 1053 (10th ed. 2014) (emphasis added). Mrs. Kay fails to acknowledge the second definition in Black's, which makes no mention of legal obligation at all: a liability is "[a] financial or pecuniary obligation in a specified amount." *Id.* And Black's Law Dictionary notes that when this financial definition is intended, people use the plural—they write "liabilities." *Id.* The Collateral Assignment notably also uses the plural "liabilities," leading to the inference that the parties here intended the financial definition, not the legal-obligation definition. When paired with the fact that the Collateral Assignment is a *financial* agreement, it becomes all the more likely that the financial definition of "liabilities" is the more appropriate meaning to be gleaned from the Assignment's plain text. Using this financial definition, the Kays' debt is clearly a liability because (as we explained) the Bank still has a right to payment—the debt is still a debt. And Mrs. Kay still has not paid the Bank. *See Grand Trunk W. R. Co. v. Boyd*, 33 N.W.2d 120, 123 (Mich. 1948) (stating that the "common meaning of 'liability'. . . is an obligation to pay a debt or amount owed"). Thus, even if the debt statute of limitations has made the Kays' debt legally unenforceable, the statute has not extinguished the right to payment itself. The "liabilit[y]" remains.

Now, the second issue with Mrs. Kay's proposed reading of the Collateral Assignment: even if she is right that "liabilities" means only legally enforceable debt, her argument fails because she does not account for all the words in the Collateral Assignment. The agreement secures "liabilities . . . either now existing or that may hereafter arise . . . ." R. 1-1, Pg. ID 27. So "liabilities" must be read together with both the phrase "now existing" and "may hereafter arise." *See Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 434 (Mich. 1992) (stating that, under Michigan law, a "court must look at the contract as a whole and give meaning to all terms");

*see also* 17 *Williston on Contracts* § 49:119 (4th ed.) ("An agreement assigning an insurance policy is . . . interpreted under general contract principles."). And when we look at both of these phrases with Mrs. Kay's "legally enforceable" definition of "liabilit[y]," we can see that the Collateral Assignment covers two types of liabilities: (1) those legally-enforceable liabilities that existed when the parties signed the agreement ("now existing") and (2) new legally-enforceable liabilities created later ("hereafter arise"). Read in context, the Kays' debt falls into the first category. The Kays' debt existed when the parties signed the Collateral Assignment, and the debt was legally enforceable back then. If the Kays and the Bank wanted the Collateral Assignment to cover only liabilities that *remained* legally enforceable, then they could have drafted the contract that way. But they did not. Since the "liabilit[y] . . . now existing" (i.e., the Kays' debt) has not been paid in the years since, the Collateral Assignment explicitly allows the Bank to collect the insurance to pay off that debt.

Accordingly, we affirm the district court insofar as it held that Mich. Comp. Laws § 600.5809 does not bar the Bank's claim on the insurance proceeds.

*Contract statute of limitations (Mich. Comp. Laws § 600.5807(9)).*[2] Mrs. Kay alleges that a different Michigan statute of limitations applies to contracts like the Collateral Assignment. Mich. Comp. Laws § 600.5807(9). Claims for breach of contract have to be brought within six years. *Id.* Since the Collateral Assignment is based on Dr. Kay's life insurance, Mrs. Kay says the statute-of-limitations clock started running either when Dr. Kay died or when Omaha first declined to pay out the life insurance proceeds. Both of those events occurred in 2009, so the

---

[2] Michigan has amended its statutes of limitations, effective May 7, 2018. 2018 Mich. Pub. Acts 8. Mrs. Kay points to a provision that used to be Mich. Comp. Laws § 600.5807(8), but now appears to be Mich. Comp. Laws § 600.5807(9). How the changes made to the amended Mich. Comp. Laws § 600.5807(9) may impact this case are also questions best left to the district court in the first instance.

statute-of-limitations clock would have run out in 2015—two years before the Bank became involved in this suit. Therefore, Mrs. Kay argues, the Bank's claim is too late.

The district court did not consider the contract statute of limitations. Accordingly, the district court also did not reach the Bank's argument that the settlement agreement tolled the statute of limitations. Since the Bank agreed with Mrs. Kay to "forbear on further collection activity" in the earlier settlement agreement, the Bank says the contract statute of limitations has not run out yet—it has been tolled. If true, the contract statute of limitations would not bar the Bank's claim to the insurance proceeds.

The record, however, is undeveloped with respect to the settlement agreement. With full briefing and argument, the text of the settlement agreement may be found ambiguous, requiring the court to inquire into the parties' intentions. And under Michigan law, parties' intentions in contract interpretation are questions of fact. *See Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 453–54 (Mich. 2003). Given the state of the record, and district courts' "special competence" for factfinding, the district court should consider the proper interpretation of the settlement agreement and the contract statute of limitations in the first instance. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 850 (2015) (Thomas, J., dissenting); *cf. Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 797 (6th Cir. 2016) ("We are not inclined to decide this matter before it has been fully briefed by both parties and considered by the district court in the first instance.").

\*     \*     \*

We AFFIRM the district court's holding as to Mich. Comp. Laws § 600.5809 and REMAND to the district court for additional consideration of Mich. Comp. Laws § 600.5807(9) and further proceedings consistent with this opinion.